ROCKEFELLER, GOVERNOR OF NEW YORK,
ET AL. *v.* WELLS ET AL.

No. 691. Decided December 18, 1967.

*Louis J. Lefkowitz,* Attorney General of New York, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *George D. Zuckerman,* Assistant Attorney General, for appellants.

*Isidore Levine* for appellees.

PER CURIAM.

The motion to affirm is granted and the judgment is affirmed.

MR. JUSTICE HARLAN, dissenting.

This action was brought by appellees under the Civil Rights Act, 42 U. S. C. §§ 1983, 1988, for declaratory and other relief. Their complaint alleged that New York's congressional districting statute does not conform to the requirements of Art. I, § 2, of the United States Constitution, as those requirements are defined in *Wesberry* v. *Sanders,* 376 U. S. 1. A three-judge court was convened.

The court found, on the basis of 1960 census statistics, that the population of one of New York's 41 congressional districts varied from the average population of the districts by 15.1%, and that 12 other districts varied from the population average by as much as 10%. It concluded that such a variation from average, without a suitable explanation, "violates constitutional requirements." 273 F. Supp. 984, at 989. The court noted that there have been "substantial" population changes

in these districts since 1960, and that complete accuracy in redistricting must await the results of the 1970 census, but reasoned that a suitable compromise would be to require redistricting immediately, premised on the best population figures now available. Revisions could then be made when the 1970 census statistics were released. This Court simply affirms, without elaboration or opinion.

There are, in my opinion, two principal issues here worthy of plenary consideration. First, the District Court thought it "too clear for debate" that this districting statute "violates constitutional requirements as enunciated by the Supreme Court." 273 F. Supp., at 989. There are few issues in reapportionment cases that are clear beyond debate, and, with respect, the invalidity of this statute is certainly not among them. It is true that variations of as much as 18.28% were disapproved in *Swann* v. *Adams,* 385 U. S. 440, but the Court there also re-emphasized that the approval or disapproval of the variations in one State "has little bearing on the validity of a similar variation in another State." *Id.,* at 445. And see *Reynolds* v. *Sims,* 377 U. S. 533, 578. The impossibility of calculating the proper result in these cases from numerical variations is illustrated by *Toombs* v. *Fortson,* 241 F. Supp. 65. The District Court there said specifically that "we will base any test as to the reasonableness of variances on the departure figure of 15 percent." *Id.,* at 70. This Court simply affirmed without opinion. 384 U. S. 210. See also *Moore* v. *Moore,* 246 F. Supp. 578, 582. Yet in this case, in which variations no greater than 15.1% are in issue, the Court again summarily affirms.

Presumably the size of the numerical variation is not alone decisive,[1] but if the "particular circumstances of

---

[1] I note, however, that the District Court in *Preisler* v. *Secretary of State of Missouri,* 257 F. Supp. 953, said specifically that "population and population alone is the sole standard for congressional

the case," *Reynolds* v. *Sims, supra,* at 578, *Swann* v. *Adams, supra,* at 445, may be crucial to the validity of districting statutes, then surely the Court should endeavor to define what such circumstances are, and to indicate how they are relevant. Instead, the Court more and more often disposes of reapportionment cases summarily, see, *e. g., Toombs* v. *Fortson, supra; Duddleston* v. *Grills,* 385 U. S. 455; *Kirkpatrick* v. *Preisler,* 385 U. S. 450; *Lucas* v. *Rhodes, ante,* p. 212; and when the Court does issue an opinion, it is content simply to recite that such circumstances may be relevant, without undertaking any elucidation. See, *e. g., Swann* v. *Adams, supra.* All this has the effect of leaving the state legislatures,[2] the lower courts, and even Congress[3] without meaningful guidance.

---

representation." *Id.,* at 973. This Court affirmed without opinion. 385 U. S. 450. See also *Bush* v. *Martin,* 224 F. Supp. 499, 511, aff'd, 376 U. S. 222.

[2] The New York Legislature, for example, made careful efforts to comply with the constitutional requirements, as they had been enunciated by this Court. The Joint Legislative Committee on Reapportionment thus expressly recognized "the absence of Federal and State constitutional and statutory standards," but concluded that "the most important standard is substantial equality of population." Interim Report of the Joint Legislative Committee on Reapportionment, 1961 N. Y. Leg. Doc. No. 45, p. 4. It added that "[w]hile exact equality of population is the ideal, it is an ideal that, for practical reasons, can never be attained. Some variation from it will always be necessary. The question arises as to what is a permissible fair variation." *Ibid.*

[3] The House Committee on the Judiciary, for example, reported favorably in 1965 on a bill which was intended to implement the requirements of *Wesberry* v. *Sanders, supra,* by creating a series of standards for the apportionment of congressional districts. The Committee noted that "[t]he courts . . . have been reluctant to prescribe standards . . . ." H. R. Rep. No. 140, 89th Cong., 1st Sess., 2. One standard included in the bill was a maximum permissible variation of 15% above or below the average population of the congressional districts within a State. *Id.,* at 2–3. Given the

Second, the confusion created by the Court's reticence is compounded, in cases in which it is held that a districting statute does not satisfy constitutional requirements, by uncertainty as to the appropriate next step. See, *e. g., Lucas* v. *Rhodes, supra.* The District Court here noted that the Court's cases provided "[l]ittle guidance or help," but concluded, nonetheless, that immediate redistricting should be ordered, based on the best available population figures. It thought that this expedient was in the pattern set by *Swann* v. *Adams,* 383 U. S. 210. *Swann,* however, was merely a brief *per curiam* opinion, which did not purport to establish any general rule on appropriate remedies. As the elections of 1968 approach, it seems to me that the time has come for this Court to provide clearer guidance to the lower courts on the proper remedy in reapportionment cases. More particularly, some indication should be given as to what part, if any, 1960 census figures are to play, alone or in combination with later, albeit incomplete or unverified, population figures. See *Lucas* v. *Rhodes, supra.*

I would note probable jurisdiction, and set the case for argument.

---

present state of the law in this area, it is difficult to imagine how a legislator could sensibly decide whether such a maximum variation satisfied applicable constitutional requirements. Indeed, Representative Kastenmeier dissented from the Committee's report, noting that "there is serious doubt whether H. R. 5505 can, in light of the *Wesberry* case, withstand constitutional attack." *Id.,* at 5.