(No. 50639.-

THE SERBIAN EASTERN ORTHODOX DIOCESE FOR THE UNITED STATES OF AMERICA AND CANADA *et al.*, Appellees, v. DIONISIJE MILIVOJEVICH *et al.*, Appellants.

*Opinion filed Jan. 12, 1979.—Rehearing denied March 30, 1979.*

MORAN and KLUCZYNSKI, JJ., took no part.

Leo J. Sullivan III, Richard J. Smith, and Michael K. Noonan, of Sullivan, Smith & Hauser, Ltd., of Waukegan, and Jerome H. Torshen, of Chicago, for appellants.

Albert E. Jenner, Jr., Keith F. Bode, Robert L. Graham, Leland J. Badger, and Eugene R. Wedoff, of Jenner & Block, of Chicago, Thomas J. Karacic, of Katz, Karacic & Helmin, of Chicago, and Henry D. Fisher, of Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

This appeal is the sequel to an earlier appeal in this case reported at 60 Ill. 2d 477 (1975), *rev'd,* 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976). The plaintiffs are the Serbian Eastern Orthodox Diocese for the United States of America and Canada, the religious body of the Serbian Eastern Orthodox Church in this country ("American-Canadian Diocese"), and Bishops Firmilian Ocokoljich, ("Firmilian"), Gregory Udicki and Sava Vukovich. The defendants, who are the appellants here, are former Bishop Dionisije Milivojevich ("Dionisije"), the Serbian Eastern Orthodox Diocese for the United States of America and

Canada, a corporation organized in 1937 under the provisions of the Illinois act relating to religious corporations (Ill. Rev. Stat. 1937, ch. 32, pars. 164 to 188), referred to in this opinion as the "religious corporation," and the Serbian Eastern Orthodox Monastery of the St. Sava, a corporation organized in 1945 under the provisions of the Illinois General Not for Profit Corporation Act (Ill. Rev. Stat. 1945, ch. 32, pars. 163a to 163a100), referred to as the "monastery corporation."

This litigation had its origin on May 10, 1963, when the Holy Synod of the Serbian Orthodox Church suspended Dionisije, the then bishop of the American-Canadian Diocese. On July 23 the Holy Assembly of the Serbian church removed Dionisije from office, and on March 5, 1974, the Assembly unfrocked him. At the time when Bishop Dionisije was suspended from office the Holy Synod appointed Firmilian as administrator of the Diocese. At the same time, the Holy Assembly dissolved the American-Canadian Diocese and replaced it with three new dioceses. With Dionisije's suspension Firmilian was also made administrator of one of the new dioceses, and when Dionisije was removed, Firmilian became its bishop. Administrators, and later bishops, were also named for the other two new dioceses.

On July 26, 1963, a complaint was filed in the circuit court of Lake County against Firmilian in the names of the religious corporation and the monastery corporation seeking to enjoin interference with the affairs and the assets of these corporations. Thereafter, on October 14, 1963, Firmilian and the other plaintiffs brought suit against Dionisije seeking to enjoin him from assuming or retaining control of the property belonging to the religious corporation or to the monastery corporation, and to direct him to turn over to the plaintiffs all assets of the two corporations. Each case involved the same issues regarding the control of the Diocese and its property, and

they were consolidated. As noted previously, Firmilian and his adherents are denominated here as the plaintiffs, and Dionisije and his supporters are referred to as the defendants.

After a bench trial the circuit court held that the suspension, removal, and unfrocking of Bishop Dionisije were valid, but that the reorganization of the Diocese was not. On direct appeal this court affirmed the latter part of the judgment, but reversed as to Dionisije's removal and defrockment, which we held improper because done in violation of the prescribed procedures of the Serbian Church (60 Ill. 2d 477, 501-03). As to Dionisije's suspension we held that it was no longer effective since he had not been tried within a year of his ecclesiastical indictment as required by church law.

The Supreme Court of the United States in turn reversed with regard to the suspension and the removal of Dionisije because our decision was considered as undertaking to resolve "religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of this hierarchical church" (426 U.S. 696, 720, 49 L. Ed. 2d 151, 169, 96 S. Ct. 2372, 2385). Following the remand of the cause to us for further proceedings, we reversed the judgment, in part. (66 Ill. 2d 469 (1977).) Thereafter, on February 22, 1978, the circuit court entered a final judgment in favor of the plaintiffs, and the defendants filed a notice of appeal. A direct appeal to this court was allowed pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)). At the same time we stayed the force of the judgment and suspended its enforcement.

Our mandate to the circuit court stated that the judgment of that court should be affirmed insofar as it held that Bishop Dionisije had been properly removed as bishop of the American-Canadian Diocese, but that that part of the judgment which held the reorganization of the American-Canadian Diocese to have been invalid should be

reversed. We are satisfied that the judgment entered by the circuit court on remand conformed to the mandate of this court and to that of the United States Supreme Court with respect to the suspension and removal of Dionisije and the reorganization of the Diocese. That being so, it is not open to the defendants as appellants to raise questions which were or could have been raised on the former appeal. *People v. National Builders Bank* (1957), 12 Ill. 2d 473, 474, 476; *People ex rel. Maeras v. Chicago, Burlington & Quincy R.R. Co.* (1967), 36 Ill. 2d 585, 586, *cert. denied* (1967), 389 U.S. 427, 19 L. Ed. 2d 655, 88 S. Ct. 578.

The defendants complain that the circuit court went beyond the terms of the mandate, however, and exceeded its jurisdiction, in that it required two foreign corporations affiliated with the Diocese to turn over their assets to the plaintiffs even though these corporations were not served with process, were not named as parties, and did not appear in the suit. One of these corporations is the St. Sava Church and Educational Mission of the Serbian Eastern Orthodox Diocese for the United States and Canada, a not-for-profit corporation organized by Dionisije under the laws of California in May 1962 while he was still bishop of the Diocese. The corporation holds legal title to about 170 acres of land near Jackson, California, acquired from the Illinois religious corporation in December 1962.

The other corporation is the St. Sava Home, a Pennsylvania not-for-profit corporation organized by Dionisije in 1966, after the present litigation had begun. In 1969 Dionisije caused to be transferred to the St. Sava Home title to 18 acres out of a tract of 1,200 acres near Shadeland, Pennsylvania, which the Illinois religious corporation had acquired in 1951. A tract of some 230 acres in Libertyville, Illinois, originally owned by the Illinois religious corporation, was transferred by it to the Illinois monastery corporation in 1945. Since the monastery corporation is a party to this suit, however, the defendants

raise no question as to the court's jurisdiction to enter judgment against it.

The ordering portion of the judgment does not in terms direct either the California or the Pennsylvania corporation to turn over assets to the plaintiffs. The defendants argue, however, that these corporations fall within the following language appearing in paragraph 6 of the judgment:

> "Defendants and each of them, and all persons, firms, corporations and entities who have acted or who are acting under, with, or pursuant to their order or direction or in concert with them, *** are further ordered to relinquish and turn over control and management of all diocesan property and assets now in their control and under their management to the plaintiff, Firmilian, or his lawfully designated nominees or successors."

The defendants' argument rests on the presence in the judgment of findings, to which the defendants also object, that the property transferred to the foreign corporations by the Illinois religious corporation was impressed with a trust imposed in favor of members of the Diocese and that, following the suspension of Dionisije, Firmilian, as administrator of the Diocese and as chief executive officer of the Illinois and the foreign corporations, became responsible for the administration of that trust. The plaintiffs' second amended and supplemental complaint does not seek relief against the foreign corporations, and we do not consider that the ordering portion of the judgment is intended to require action on their part. *Aloe v. Lowe* (1921), 298 Ill. 404, 408.

So far as the findings of the court are concerned, they are not inappropriate. This case was tried and decided on the proposition that the property at stake was held in trust for the members of the Diocese subject to the control of its bishop under the provisions of the constitutions of the Serbian Orthodox Church and of the Diocese. The defendants' answer to the complaint did not assert by way

of an alternative defense that the disposition of the property to which the two corporations hold title was not subject to the directives of whoever was the legitimate bishop of the Diocese. The earlier judgment entered after trial contained the same findings as those in the judgment on remand respecting property held by the foreign corporations. The defendants' post-trial motion to reconsider did not challenge them. The plaintiffs state that no such challenge was made on appeal, and the defendants do not contend to the contrary.

The validity of Dionisije's suspension and removal and the validity of Firmilian's appointment as administrator having been conclusively adjudicated, any claim based on Dionisije's former status as bishop was perforce extinguished. (See 426 U.S. 696, 709, 723 n.15, 724, 49 L. Ed. 2d 151, 163, 170 n.15, 171, 96 S. Ct. 2372, 2380, 2387 & n.15.) For the same reason we cannot now entertain the defendants' contention that the property held by the foreign corporations is, under their constitution and bylaws, controlled individually by their members, and is not in fact diocesan property. Moreover, even assuming that the judgment below somehow deprived the corporations of a property interest, we fail to see how Dionisije or his co-defendants were thereby prejudiced or aggrieved. *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 451.

On the remand the defendants also asserted a right to be reimbursed for "improvements" in the Pennsylvania property which are said to have enhanced its value. These improvements, whose nature is not described in the defendants' brief, were allegedly made at the defendants' own expense, and the defendants ask that the cause be remanded to the trial court for the purpose of receiving evidence relative to the amount due.

The alleged improvements were not made, the defendants admit, until after the conflict between the Dionisije

and the Firmilian factions had developed, Dionisije had been deposed, and the present litigation had been begun. It is not asserted that the improvements were made with the plaintiffs' consent or pursuant to a court order. And again, it does not appear that the question of reimbursement was raised either at the trial or in the appeal which followed. A hearing on the reimbursement matter was therefore not warranted.

On the remand the defendants represented to the trial court that in May 1977 they had obtained through the Federal Freedom of Information Act (5 U.S.C. sec. 552 (1977)) certain documents not available at the time of trial which purportedly showed complicity by the government of Yugoslavia in the proceedings which led to the suspension and removal of Dionisije. The defendants alleged that in addition to the documents already received others had been requested from various Federal agencies but had not yet been delivered. The defendants did not request the admission into evidence of any documents, but asked that they be allowed "additional time to obtain full documentation and contact possible witnesses."

Even if the defendants were seeking a new trial in an ordinary suit, the record before us would require a holding that no showing had been made of newly discovered evidence so conclusive as to make it likely that a new trial would yield a different result (*Crane Co. v. Parker* (1922), 304 Ill. 331, 337). And here, of course, the determination whether there was ground for Dionisije's suspension and removal was one which, under the decision of the United States Supreme Court in this case, was committed to an ecclesiastical tribunal. Review of its decision would be "marginal," extending at most to whether its decision was the product of collusion. 426 U.S. 696, 711-13, 49 L. Ed. 2d 151, 163-64, 96 S. Ct. 2372, 2381-82.

This proceeding has now lasted over 15 years, and during this time the defendants, by virtue of supersedeas

orders, have enjoyed control over the property and the administration of diocesan affairs to the exclusion of the plaintiffs, notwithstanding the removal of Dionisije. There is no reason to prolong this litigation into the indefinite future by permitting a roving inquiry having so uncertain an outcome as the one sought by the defendants.

For the reasons given above, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MORAN and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.