(No. 52598.—

PSL REALTY COMPANY *et al.*, Appellants, v. GRANITE INVESTMENT COMPANY *et al.*, Appellees (Federal Savings and Loan Insurance Corporation, Appellant).

*Opinion filed September 30, 1981.*

292

W. Stanley Walch, Robert H. Brownlee, and Mary K. Bennett, of Thompson & Mitchell, of St. Louis, Missouri, and James H. Bandy of Listeman, Bandy & Hamilton, of Belleville, for appellants Illini Federal Savings & Loan Association and PSL Realty.

Robert W. Patterson and William J. McKenna, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellant Federal Savings & Loan Insurance Corporation.

Rex Carr and David J. Letvin, of Cohn, Carr, Korein, Kunin, Schlitchter & Brennan, of East St. Louis, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

The complexity of the factual picture surrounding this litigation makes it extremely difficult to succinctly state the nature of the case and its issues. Broadly stated, this case involves the issuance of an injunction by the appellate court of this State enjoining the holder of certain notes and mortgages on real estate from proceeding with a foreclosure proceeding in the Federal district court and, in turn, an injunction issued by the Federal district court enjoining State court appellate and circuit judges from interfering with the jurisdiction of the Federal court in the foreclosure proceeding. A clearer understanding of the case must await the recitation of facts.

During the 1960's, defendant James Green (Green), with others, developed and constructed several apartment complexes in Madison, Clinton, St. Clair and Sangamon counties, Illinois. To obtain funds for the projects, first-lien mortgages were executed in favor of Piasa Savings and Loan Association (Piasa). Financial difficulties were encountered in the completion and operation of the units, requiring a restructuring of the debt. To accomplish this, the parties entered into an agreement, termed the "base agreement," on August 1, 1970. Under its terms, title to the real estate was conveyed to a newly formed corporation named PSL Realty Company (PSL), which was wholly owned by Piasa. PSL then entered into contracts for deed to the same properties with Granite Investment Company (Granite), a limited partnership of which Green was the principal part-

ner. The contract provided that Granite was to manage the properties and provided for conveyance to Granite after payments had been made and certain conditions fulfilled. Piasa continued to hold the first-lien mortgages as mortgagee. By the terms of the base agreement, rental proceeds of the units were to be delivered to PSL by Granite.

This arrangement did not improve the financial situation, and in 1971 the Federal Savings and Loan Insurance Corporation (FSLIC) determined Piasa was on the verge of insolvency and procured the merger of Piasa into Illini Savings and Loan Association (Illini). Illini thus became the sole owner of PSL Realty Company, which, under the base agreement, was the holder of legal title to the properties subject to a contract for deed to Granite. Also, by virtue of the merger, Illini became the owner of the mortgages. As an inducement to Illini, a contribution agreement was entered into whereby FSLIC agreed to subsidize Illini for certain losses and FSLIC was granted an option to terminate the subsidy by purchasing certain assets from Illini at book value. At the time of the merger, the Green loans totaled about $14 million and were delinquent. The apartment complexes continued to lose up to $30,000 per month. On March 27, 1972, PSL and Illini demanded the books and records from Granite, but they were refused. On April 11, PSL and Illini sought, and received, a temporary injunction in the circuit court of Madison County. The injunction ordered Granite and Green to refrain from collecting rents and not to interfere with PSL's collection of the same, and to turn over their books for examination. Also, in April 1972, notice of default and forfeiture of the contracts for deed between PSL and Granite were served upon Granite and Green. On April 28, 1972, the trial court denied a motion by Granite and Green to dissolve the temporary injunction and on motion of PSL and Illini appointed FSLIC receiver of the properties *pendente lite*. Pursuant to authority contained in the receivership order, FSLIC designated Illini as its local

agent in the management of the properties.

Green and Granite filed an interlocutory appeal contesting the issuance of the temporary injunction and the appointment of the receiver. The original opinion of the appellate court, dated July 23, 1976, dissolved the temporary injunction and receivership on the ground that they were merely ancillary remedies, and that they were inappropriate in the absence of a complaint stating an underlying cause of action. (*P.S.L. Realty Co. v. Granite Investment Co.* (1976), 42 Ill. App. 3d 697.) The cause was remanded for an accounting of the receivership, the distribution of the net income, and the setting of fees for the receiver.

On August 13, 1976, PSL and Illini filed a petition for rehearing in the appellate court. They pointed out that they had received no installment payments on the contracts for deed, contrary to an assumption in the opinion, and requested an order of the appellate court directing the receiver to apply accumulated monies in its hand to the contracts.

On August 18, 1976, asserting its contractual right under the contribution agreement with Illini, FSLIC purchased the first-lien mortgages on the property, which was in receivership, for $10,673,000, and on August 26, 1976, filed a mortgage foreclosure action in the Federal District Court for the Southern District of Illinois.

On August 31, 1976, Granite and Green also petitioned the Illinois Appellate Court for rehearing of its decision which dissolved the temporary injunction and receivership. Granite and Green, in addition to asserting that they were entitled to an award of part of the money held by the receiver, alleged that FSLIC had acquired the mortgages and was prosecuting a foreclosure action in Federal court, both in contravention of its duty as receiver.

On the same day, FSLIC petitioned the Federal district court for an order authorizing it to remain in possession of the subject real estate as mortgagee. Granite opposed the petition on the grounds that FSLIC was estopped, by its

conduct, from proceeding with foreclosure and that FSLIC had no legal right to purchase the mortgages in light of the State court's jurisdiction. On September 2, 1976, the Federal district court entered an order authorizing FSLIC to remain in possession of the properties as mortgagee, but provided specifically:

"That this order shall become operative upon the effective date of the mandate from the Illinois Appellate Court for the Fifth District dissolving FSLIC's status as receiver of the subject properties."

On September 23, 1976, the appellate court denied the petitions for rehearing and filed a supplemental opinion to the one previously filed. The mandate issued October 13, 1976. We will later consider the nature of the mandate in more detail. After the mandate issued, the district court, pursuant to its order of September 2, proceeded with the foreclosure action.

When the State court case returned to the trial court on remand, the receiver, FSLIC, filed a petition for an order directing it to file a final report and setting a hearing thereon. On November 1, 1976, Granite and Green filed both an objection to the petition of FSLIC and a petition of their own alleging that, contrary to representation, FSLIC had a substantial interest in the properties when it was appointed receiver. The petition also alleged that, in breach of its fiduciary duty, FSLIC purchased the 48 mortgages on the properties of which it was receiver, accelerated the payments due upon such mortgages, and filed suit to foreclose all 48 mortgages. The petition concluded with a prayer that the receiver be ordered to immediately reassign the mortgages to Illini, account for all its expenditures, and return physical possession and management of the properties to petitioners.

FSLIC filed a response to the November 1, 1976, petition of Granite and Green in which it denied any wrongdoing in its actions as receiver, set out the authority

by which it acquired the mortgages, and alleged that it acquired the mortgages and instituted foreclosure only after the appellate court had ordered the receivership dissolved. On December 22, 1976, on its own motion, the trial court struck the Granite and Green petition of November 1, 1976, and the response of FSLIC thereto for the reason that neither of the pleadings was responsive to the mandate of the appellate court. The court also ordered the filing of the final account of the receiver and objections thereto.

In the trial court numerous motions, objections and other pleadings not relevant to this opinion were filed by various parties. A detailed recitation of these pleadings and the court's rulings thereon is contained in the appellate court opinion filed in deciding the appeal from the judgment of the circuit court on remand, which we are now reviewing. (76 Ill. App. 3d 978.) The final account of the receiver and objections thereto were filed in the trial court as directed. A hearing was held thereon and on other pending pleadings. On April 29, 1977, the trial court entered an order, the pertinent parts of which did the following: (1) approved and adopted the final report of the receiver, including all actions taken by the receiver and its managing agent; (2) awarded the receiver a fee of 4% of the gross receipts generated by the receivership and directed payment from the undistributed proceeds; (3) directed that the balance of the undistributed funds be paid to the mortgagee (FSLIC) for application to the indebtedness encumbering the property; and (4) discharged and released the receiver and its agents, effective September 30, 1976. Granite and Green appealed both from the order striking their petition of November 1, 1976, which charged FSLIC with breaching its fiduciary duty and from the final order entered April 29, 1977.

While the appeal by Granite and Green was pending before the appellate court, the trial of the foreclosure case in Federal court was proceeding. On November 16, 1978,

FSLIC rested its case and Granite's motion for a directed verdict was denied. The trial was subsequently recessed, and in the spring of 1979 the district court advised the parties that the trial would resume on September 24, 1979.

On September 13, 1979, the Illinois Appellate Court entered its judgment in the appeal of the circuit court order discharging the receiver. The appellate court held that FSLIC breached its fiduciary duty as a receiver by acquiring the notes and mortgages to the property, remanded the case to the circuit court and directed it to order FSLIC to credit its receiver's fee to the mortgages, and directed FSLIC to convey the notes and mortgages back to Illini. In all other respects the order appealed from was affirmed. 76 Ill. App. 3d 978.

On September 24, 1979, in the Federal court case, Granite and Green moved to dismiss the proceedings because the State appellate court, in its September 13 order, had directed FSLIC to reconvey the mortgages to Illini. On September 25, the parties were informed that the Federal district court judge had rejected the arguments of Granite and Green and that the hearing in the foreclosure case would proceed on September 27.

On September 26, Granite, having given notice to opposing counsel, appeared before a justice of the State appellate court and requested an injunction against FSLIC from proceeding with the foreclosure in the Federal court. On the same day, a justice of the Illinois Appellate Court entered an order staying the September 13, 1979, decision of the appellate court. The order also enjoined FSLIC and PSL from proceeding with the foreclosure case in Federal court and, along with Illini, restrained them from transferring the properties. The order further declared that any attempted future transfer of title to the properties by FSLIC, Illini, or PSL would be void. It then directed that this cloud on the titles to the properties be recorded with the recorder of deeds in the respective counties in which the

properties were situated.

On September 26, 1979, the Federal district court, in the foreclosure proceeding, after having denied the motion to dismiss the case the previous day, entered an order confirming its jurisdiction of the parties and noted that it was compelled to do whatever was necessary to protect its jurisdiction. On September 27 the district court was presented with the order for stay issued by the State appellate court. The district court admonished the parties to make every effort to avoid a conflict between the two court systems. FSLIC represented to the district court that it would ask the State appellate court to reconsider its order, and the foreclosure hearing was again recessed until October 1, 1979.

On September 28 the State appellate court heard FSLIC's motion to reconsider its previous order. On October 1, 1979, the appellate court informed the parties by telephone that the injunction against PSL, FSLIC, and Illini remained in effect.

After being advised on October 1 of the appellate court's action, the Federal district court decided that an injunction pursuant to 28 U.S.C. § 2283 (1976) was necessary in aid of its jurisdiction. The district court found that the actions of the Illinois Appellate Court interfered with the property in its possession. The injunction restrained, among others, all justices of the Illinois Appellate Court for the Fifth District, and all judges of the Illinois circuit courts who received actual notice of the injunction, "from taking any action, without prior written permission of this Court, which in any way, directly or indirectly, impinges upon, limits, or otherwise interferes with the jurisdiction of this Court in this cause * * *." On October 3, 1979, the Illinois Appellate Court issued a supplemental opinion which sustained the injunction against FSLIC, PSL and Illini, and declined to remove the restraint on the alienability of the properties.

Also, on October 3, 1979, the parties to the foreclosure action appeared before the district court pursuant to its order for the resumption of the trial. At that time, Granite filed a notice of appeal from the injunction order of the district court to the United States Court of Appeals for the Seventh Circuit. It also filed a motion requesting a stay of the enforcement of that order and a postponement of the foreclosure proceedings pending Granite's appeal. The district court denied the motion for stay, but allowed Granite until October 5 to obtain a postponement of the proceeding directly from the United States court of appeals and ordered the trial to resume on October 9. On October 5, 1979, the United States court of appeals denied Granite's application for a stay of the proceedings.

On October 9, 1979, Granite filed a debtor's petition to reorganize under chapter 11 of the Bankruptcy Act in the United States bankruptcy court for the Southern District of Illinois. Later that day, Granite advised the district court of the petition and asserted that under section 362(a) of the Act the foreclosure proceedings were automatically stayed. 11 U.S.C.A. § 362(a) (1979).

On October 24, 1979, this court entered an order recalling the appellate court mandate and staying the appellate court order. We granted leave to appeal in this matter on January 30, 1980.

On September 12, 1980, the court of appeals rendered its decision concerning the permanent injunction entered by the Federal district court on October 11, 1979. It concluded that the district court had acted properly. The court of appeals concluded that the circuit court of Madison County had never acquired jurisdiction, since only ancillary relief had been sought. Consequently, the acts of the State court were void and the district court was free to assert exclusive jurisdiction over the properties. The subsequent stay order issued by the appellate court effectively interfered with the control exercised by the district court. Thus, the district

court properly exercised its judicial discretion in enjoining the Illinois Appellate Court. (*Federal Savings & Loan Insurance Corp. v. PSL Realty Co.* (7th Cir. 1980), 630 F.2d 515.) In setting forth our statement of facts, we have, to a great extent, followed the format of the court of appeals in the case cited. In discussing the issues involved and their resolution, it will be necessary to state some of the above facts in more detail. We will attempt to avoid unnecessary repetition.

We will first discuss the effect of the judgment of the appellate court entered on the first appeal, which was an appeal from the order of the circuit court issuing a temporary injunction and appointing FSLIC receiver *pendente lite*. (42 Ill. App. 3d 697.) In doing so, we must consider the proceedings which resulted in the appointment of FSLIC as the receiver *pendente lite* and those leading to the appellate court's judgment in more detail. On April 11, 1972, PSL and Illini filed a complaint for a temporary injunction in the circuit court of Madison County, alleging that, by virtue of the base agreement, all rents collected from the property subject to the mortgages were to be paid to PSL, that Granite refused to make these payments to PSL, that Illini and PSL attempted to collect the rents directly from the tenants, that Granite and Green interfered with this attempt by Illini and PSL to collect the rents, and that Granite and Green continued to attempt to collect the rents. The court entered a temporary injunction. Granite and Green moved to dissolve the temporary injunction and filed a cross-complaint asking that Illini and PSL be enjoined from interfering with Granite and Green's management of the properties. It appears that no written pleading was filed requesting the appointment of a receiver. The record reflects that on April 26, 1972, during the hearing on the above pleadings, a discussion was had as to the advisability of appointing a temporary receiver because of the rents that would come due pending the resolution of the dispute as to

who should collect the rents. Apparently, an oral motion to appoint a temporary receiver was made by PSL and Illini. The office of the FSLIC was contacted and asked if it would act as the receiver. The court then ordered that if FSLIC would consent to act, it would appoint FSLIC as temporary receiver. On April 28, 1972, the court entered the order appointing FSLIC as receiver *pendente lite* to manage, lease, pay bills, collect rents, supervise and repair the properties, and to report to the court on the 15th day of each month as to the income and expenditures from the property. No provision was contained in the order as to what disposition the receiver should make of the amounts collected in excess of the authorized expenditures.

Granite and Green filed an interlocutory appeal from the order entering the temporary injunction and the order appointing the receiver *pendente lite*. Although the order appealed from was entered April 28, 1972, the case was not argued orally in the appellate court until March 31, 1976, almost four years later. The case had been continued from time to time at the request of the parties on the representation that settlement was imminent. When the case was finally decided, the appellate court declared that the orders for temporary injunction and temporary receivership were wrongfully entered, finding that such remedies are mere ancillary remedies and cannot stand alone as the full and ultimate relief afforded. The appellate court thereupon dissolved the temporary injunction and receivership. The court noted, however, that during the nearly four years' delay, Granite and Green acquiesced in the continued receivership status and, in fact, had originally agreed to the appointment of FSLIC as receiver. Therefore, the court held that although the receivership must be dissolved, Granite and Green were not entitled to have the service of the receivership at no cost to them. The appellate court then remanded the case to the trial court to determine what amount should be assessed as expenses and fees of the

receivership. The opinion concluded: "Temporary injunction and receivership dissolved. Cause remanded with directions." (42 Ill. App. 3d 697, 703.) The opinion was filed July 23, 1976.

Although both the plaintiffs and the defendants filed petitions for rehearing, neither petition challenged the dissolution of the receivership. A supplemental opinion was filed on the denial of rehearing on September 23, 1976.

We noted earlier in this opinion that on August 18, 1976, FSLIC purchased the mortgages from Illini and on August 25, 1976, filed a mortgage foreclosure action in the Federal district court. On August 31, 1976, FSLIC petitioned the district court for an order authorizing it to remain in possession, and on September 2, 1976, the district court entered such an order but provided that it become effective on the issuance of the mandate by the appellate court. The appellate court issued its mandate to the circuit court of Madison County on October 13, 1976.

The appellate court opinion, filed July 23, 1976, did two things. First, it dissolved the temporary injunction and receivership. It did not remand the case to the circuit court with directions that that court enter the order of dissolution. Second, the judgment of the appellate court remanded the case to the trial court to determine the expenses and compensation for the receiver and to determine whether the plaintiffs were entitled to receive from the funds in the hands of the receiver the accrued unpaid installments upon the contracts for deed.

We must first determine the effective date of the judgment of the appellate court. That judgment was final when entered and not on the date that the mandate of the appellate court issued. (*Upton v. Swedish American Hospital* (1910), 157 Ill. App. 126, 128.) The mandate of a court of review is the transmittal of the judgment of that court to the circuit court, and revests the circuit court with jurisdiction. (See *Board of Directors v. People ex rel. Raymond* (1901),

189 Ill. 439, 454-55; *Fisher v. Burks* (1918), 285 Ill. 290, 291-93; *Continental Paper Grading Co. v. Fisher & Associates, Inc.* (1957), 13 Ill. App. 2d 1, 5; *Busser v. Noble* (1961), 32 Ill. App. 2d 181, 186.) Our Supreme Court Rule 368(a) (73 Ill. 2d R. 368(a)) provides that the mandate of the reviewing court shall be transmitted to the circuit not earlier than 21 days *after the entry of the judgment.* The date of the issuance of the mandate does not control the effective date of the appellate court judgment. Thus, the judgment of the court of review is entered when the opinion is filed with the clerk of the court and the mandate (the transmittal of it to the circuit court revesting that court with jurisdiction) will issue not earlier than 21 days after the opinion is filed with the clerk. Also, the filing of a petition for rehearing does not alter the effective date of the judgment of a reviewing court unless that court allows the petition for rehearing, in which event the effective date of the judgment is the date that the judgment is entered on rehearing. (See 73 Ill. 2d R. 367(a).) In this case the petitions for rehearing were not allowed. They were denied, and the original opinion was modified on denial of rehearing, but only as to the matters to be considered on remand, which we will discuss later.

The judgment of the appellate court entered on July 23, 1976, was final as to the dissolution of the receivership. When a judgment is reversed by a court of review, the judgment of that court is final upon all questions decided, and if the cause is remanded, the circuit court can take only such action which conforms to the judgment of the court of review. (*Crozier v. Freeman Coal Mining Co.* (1936), 363 Ill. 362, 390; *Nye v. Nye* (1952), 411 Ill. 408, 414.) Therefore, on July 23, 1976, the date of the filing of the original appellate court opinion, the receivership was dissolved, and the authority vested in the receiver to manage the real estate, collect the rents, etc., terminated. The appellate court used the term "dissolved," whereas, ordinarily, in setting aside an order creating a receivership, the term used

by the text writers hereinafter cited is "vacated." We should note that this is not a case where the receiver has been removed, which would only terminate the appointed receiver's authority to act. In such case the control of the property would continue in the court. Here, the order of the appellate court did not simply remove the receiver. It terminated the receivership, that is, it terminated the authority of the court to continue to deal with the mortgaged property. (See 3 Clark, Receivers § 692.1, at 1274 (3d ed. 1959).) Although the order had the effect of releasing the mortgaged real estate from the receivership, FSLIC, while acting as receiver, had collected rents and, at the time of the order dissolving the receivership, held sums of money derived from the rental income of the property. Although the dissolution order had the effect of removing the mortgaged property from the receivership, it was necessary for the court to retain jurisdiction of the money in the hands of FSLIC in order to assure a proper distribution thereof. Thus, it could be said that in this respect, at least, and to this extent only, the order of July 23, 1976, did not discharge the receiver. (See 3 Clark, Receivers § 695, at 1280 (3d ed. 1959); High, Receivers § 833, at 986 (4th ed. 1910).) It is not necessary to determine whether the appellate court's order dissolving the receivership totally discharged the receiver or only discharged the receiver as to the mortgaged property. Even if the dissolution order were viewed as a total discharge of the receiver and the receivership, the funds in the hands of FSLIC must be considered as funds held by the court for others, and in this respect FSLIC would be either a trustee of those funds, or a *de facto* receiver, and the court, in the exercise of its equitable powers, must control the distribution of these funds. (See *Doyne v. Saettele* (8th Cir. 1940), 112 F.2d 155.) In any event, the order of the appellate court of July 23, 1976, removed from the jurisdiction of the State court the property covered by the mortgages held by Illini.

Therefore, on August 18, 1976, when FSLIC purchased

the mortgages from Illini, the property covered by these mortgages was not an asset of the receivership and was not under the jurisdiction and control of the State court. Also, when the mortgage foreclosure action was filed in the district court, the property was not under the jurisdiction or control of another court. In an *in rem* proceeding, in which the court must have control of the property which is the subject matter of the suit in order to grant the relief sought, the court first acquiring control of the property is entitled to maintain and exercise its jurisdiction to the exclusion of other courts. (*Mandeville v. Canterbury* (1943), 318 U.S. 47, 48-49, 87 L. Ed. 605, 606-07, 63 S. Ct. 472, 473; see generally 14 Ill. L. & Prac. *Courts* § 261, at 418 (1968).) Therefore, when the mortgage foreclosure action was filed in the Federal court, that court acquired jurisdiction of the mortgages and the property covered by them, and it was entitled to exercise its jurisdiction to the exclusion of the State courts. The appellate court order of September 13, 1979, rendered following the filing of its opinion in the second appeal which directed FSLIC to reconvey the notes and mortgages back to Illini, the stay order and injunction issued by the appellate court enjoining FSLIC and PSL from proceeding with the foreclosure case pending in the Federal court, the order declaring void any transfer of the property by FSLIC, PSL and Illini, and the order directing that the court's order be recorded as a cloud on the title to the real estate are all void. This holding also applies to similar provisions in the subsequent orders of the appellate court of October 1 and October 3, 1979, which in any way impinge upon the exercise of jurisdiction or control of the notes, mortgages and real estate involved in or connected with the mortgage foreclosure proceeding in the Federal district court.

Although the State court no longer had any authority to deal with the mortgages on the real estate, FSLIC was still subject to the jurisdiction and control of the court by the

authority of whose order it had collected the money which it held. The appellate court, in the second appeal, found that FSLIC, in purchasing the mortgages from Illini, had acted in a manner incompatible with its position as an officer of the court and ordered that all fees and compensation be denied to FSLIC and that the fees and compensation that had been allowed be paid toward the satisfaction of the mortgages.

The circuit court had denied Granite and Green this last-stated relief, which the appellate court allowed. In determining the correctness of the circuit court's denial of this relief, we must look to the command of the mandate which the appellate court had issued in 1976 upon its remand of the case in the previous appeal.

The correctness of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court opinion. (*Muhlke v. Muhlke* (1918), 285 Ill. 325; *Fisher v. Burks* (1918), 285 Ill. 290; see generally 3 Ill. L. & Prac. *Appeal & Error* § 985, at 225 (1953).) However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant. (*People ex rel. Barrett v. Bardens* (1946), 394 Ill. 511; *People ex rel. Olson v. Scanlan* (1920), 294 Ill. 64; *People ex rel. Andalman v. Finnegan* (1932), 350 Ill. 109.) In construing the language, matters which are implied may be considered embraced by the mandate. (*Chicago Ry. Equipment Co. v. National Hollow Brake Beam Co.* (1909), 239 Ill. 111.) The trial court may only do those things directed in the mandate. (*People ex rel. Maeras v. Chicago, Burlington & Quincy R.R. Co.* (1967), 36 Ill. 2d 585, *dismissed* (1967), 389 U.S. 427, 19 L. Ed. 2d 655, 88 S. Ct. 578; *Serbian Eastern Orthodox Diocese v. Milivojevich* (1979), 74 Ill. 2d 574, *cert. denied* (1979), 433 U.S. 904, 61 L. Ed. 2d 872, 99 S. Ct. 3096; *People ex rel. White v. Busenhart* (1963), 29 Ill. 2d 156; *People ex rel. McLaren v. DeBoice* (1941), 377 Ill. 634; *People v. National*

*Builders Bank* (1957), 12 Ill. 2d 473; see generally 3 Ill. L. & Prac. *Appeal & Error* § 883, at 144 (1953).) The trial court has no authority to act beyond the dictates of the mandate. Thus, the controlling question in the appeal from the remand in this case is whether the trial court complied with the mandate.

The mandate in question on remand from the previous appeal stated in part:

"THEREFORE, It is considered by the Court, that, for that error, and others in the record and proceedings aforesaid, the judgment of the Circuit Court in this behalf rendered, be REMANDED to the Circuit Court of Madison County with *directions*. And it is further considered by the Court, that the said Appellants, Granite Investment Company and James C. Green, recover of and from the said Appellees, cost by them in this behalf expended, and that they have execution therefor." (Emphasis added.)

Thus, it is first required that the trial court consider certain costs to be recovered by Granite and Green. Secondly, the mandate required that the court follow the directions included in the opinion. Those directions included:

"[W]e do not feel that defendants are entitled to have had the services of the receiver at no cost to defendants. Rather, the fees and expenses of the receivership should be assessed out of the receivership property and the income derived therefrom; and we remand this cause to the circuit court to determine what amount should be properly assessed as expenses and fees of the receivership." (42 Ill. App. 3d 697, 703.)

The direction of the opinion was that the receiver was to be compensated. The court did not remand the matter to determine whether or not FSLIC should receive a fee. Rather, it remanded to determine how large that fee should be. Illini and PSL filed a petition for rehearing pointing out that the opinion assumed that, during the receivership, payments had been made on the underlying obligations,

whereas no such payments had been made. Also, Granite filed a petition for rehearing with the appellate court. Among other things, Granite alleged:

"That on the 19th day of August, 1976, Illini did assign all of the mortgages on the properties in question to the FSLIC and that on the 26th day of August, 1976, the FSLIC did file a mortgage foreclosure action in the Federal Court in and for the Southern District of Illinois at Springfield, Illinois, alleging that inasmuch as no mortgage payments had been made since March of 1972 (the receiver took over the properties in April of 1972), these mortgages were in default and it was foreclosing on same."

Based upon Granite's, as well as Illini's, petitions for rehearing, the appellate court filed a supplemental opinion on September 23, 1976. In denying the rehearing the court altered the original opinion as follows:

"Upon remand, the trial court should call for pleadings upon the issue of plaintiffs' entitlement to receive from funds in the hands of the receiver the accrued, unpaid installments upon the contract for deed, and after a hearing, should determine the plaintiffs' entitlement upon the merits of the question. The direction to the trial court to conduct a hearing on the fees and expenses of the receivership, as provided in the original opinion, stands." (42 Ill. App. 3d 697, 704.)

While the supplemental opinion provided for a hearing on the plaintiffs' entitlement to funds, it did nothing to alter the holding of the original opinion that FSLIC was entitled to be compensated for its services as receiver. In fact, the supplemental opinion specifically confirmed the holding of the original opinion in this regard. This affirmance of the holding of the original opinion that FSLIC was entitled to be compensated was made after Granite and Green, in their petition for rehearing, had called the court's attention to the fact that FSLIC had acquired the mortgages from Illini.

On remand, Granite and Green raised several issues in the circuit court and again alleged that FSLIC had acquired

the mortgages from Illini and requested that the court order FSLIC to reassign the mortgages to Illini. The circuit court, in construing the mandate of the appellate court, held that the relief prayed by Granite and Green was beyond the scope of the mandate and denied their prayer for relief. The appellate court, on appeal, sustained the circuit court's holding that the relief sought was beyond the scope of the mandate as to most of the issues raised by Granite and Green. However, as to FSLIC's entitlement to compensation for services, it reversed the trial court and held that this issue was within the purview of the mandate. The appellate court held that its previous mandate directing the circuit court to determine plaintiffs' (PSL's and Illini's) entitlement to receive payments from the money held by the receiver and the receiver's entitlement to expenses vested the circuit court with authority to determine Granite's and Green's claim against FSLIC. Also, since the alleged misconduct occurred after the filing of the previous opinion, the appellate court held that the circuit court had jurisdiction to consider this conduct.

We do not agree. We noted above that Granite and Green, in their petition for rehearing in the previous appeal, had called the court's attention to the fact that FSLIC had acquired the mortgages from Illini. Granite and Green, in their petition for rehearing, did not ask for the same remedy for this alleged misconduct that they asked for when they raised the question in the trial court. However, the fact that FSLIC had acquired the mortgages from Illini was, nonetheless, made known to the appellate court before it modified its opinion on denial of rehearing and before its mandate issued. We quoted above the modification made by the appellate court by the supplemental opinion on denial of rehearing. The last sentence of that supplemental opinion concerning fees and expenses of the receiver bears repeating:

"The direction to the trial court to conduct a hearing

on the fees and expenses of the receivership, *as provided in the original opinion, stands.*" (Emphasis added.) (42 Ill. App. 3d 697, 704.)

Since this language refers to the provisions of the original opinion concerning the fees and expenses of the receiver, the language of that opinion previously quoted also bears repeating:

"[W]e do not feel that defendants are entitled to have had the services of the receiver at no cost to defendants. Rather, the fees and expenses of the receivership should be assessed out of the receivership property and the income derived therefrom; and we remand this cause to the circuit court to determine *what amount should be properly assessed as expenses and fees of the receivership.*" (Emphasis added.) (42 Ill. App. 3d 697, 703.)

The case was therefore remanded to the circuit court, not to determine *if* the receiver is entitled to fees, but to determine the amount of those fees. This holding of the original opinion was reaffirmed by the appellate court in its supplemental opinion after Granite and Green, in their petition for rehearing, had pointed out FSLIC's alleged misconduct. This holding of the appellate court in the original appeal established the law of the case on this question. This holding was binding on the circuit court on remand and was binding on the appellate court on appeal from the judgment of the circuit court entered on remand. This court has held:

"Where the Appellate Court * * * on the first appeal to it, announces a particular view of the law governing the case and reverses and remands the case for further proceedings in accordance with the views announced, if the case is again brought before such court for review the former decision is binding on the court making it, and the questions decided and determined by it on the first appeal are not open for re-consideration on the second appeal." (*Zerulla v. Supreme Lodge Order of Mutual Protection* (1906), 223 Ill. 518, 520.)

Also see *Relph v. Board of Education* (1981), 84 Ill. 2d 436.

There must be an end to litigation. This case appears to be interminable, and will certainly prove to be so if the various courts through which it passes consider and reconsider each question several times. The record in this case discloses that the numerous suits mentioned in this opinion do not constitute all of the litigation involving these parties growing out of the transactions mentioned herein. The record discloses that there were other cases pending in various circuit courts when this case was being heard on remand. The appellate court decided that the receiver was entitled to be paid fees and expenses. That should have ended the dispute on this question. Since the alleged misconduct of FSLIC was made known to the appellate court before it reaffirmed that holding, it cannot now be argued that these allegations of the receiver's misconduct were not previously before the court, even though the allegations were contained only in the petition for rehearing. See *Sherman v. Town of Jefferson* (1917), 280 Ill. 206, 207.

Accordingly, we reverse that part of the judgment of the appellate court which ordered FSLIC, Illini and PSL to stay any action in regard to the 48 mortgages, including the prosecution of foreclosure proceedings, and to stay any attempt to transfer or assign the mortgages. We further reverse the order of the appellate court which directed that any attempted transfer of title by the receiver, FSLIC, or PSL or Illini be void and ineffective, and which ordered the defendants to cause a copy of the stay order to be recorded in the counties where the real estate involved is located to reverse the order of the appellate court ordering FSLIC to reconvey to Illini the 48 mortgages in question and ordering that FSLIC shall receive no fees and compensation for its services as receiver, and directing that the fees and compensation previously allowed be returned to the receiver's account and paid toward the satisfaction of the mortgages. That part of the appellate court judgment affirming the order of the circuit court of Madison County is affirmed.

The cause is remanded to the circuit court of Madison County to determine the status of the bankruptcy proceedings referred to herein. Any sum of money over and above the fees and expenses of the receiver, authorized to be paid, must be held by the court subject to the determination of the bankruptcy proceedings and the foreclosure proceedings pending in the Federal court.

*Affirmed in part and reversed in part; cause remanded, with directions.*