Kenneth G. GILLIS and Gillis Automo-
tive Products, Inc., a Wyoming cor-
poration, Appellants (Plaintiffs),

v.

F & A ENTERPRISES, a general partner-
ship; Ralph Anderson; Jerry Freeze; K.
Jayarama Holla; Shirin Bhat Holla; and
John C. Hoard, Appellees (Defendants).

No. 96–100.

Supreme Court of Wyoming.

March 19, 1997.

Jeffrey C. Gosman of Gosman Law Offices, Casper, for Appellants.

John C. Hoard, Casper, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

LEHMAN, Justice.

We are called upon to resolve the question of when the statute of limitations begins to run in a suit for conversion or wrongful execution where the judgments upon which a valid execution sale was conducted are later reversed. The district court granted appellees' motion to dismiss, finding the statute of limitations started to run at the date of execution on appellants' property and that appellants' claims were thus time barred. We agree with the result reached by the district court, but we hold that the statute of limitations began to run when the judgments allowing the sale were reversed. Specifically, the clock started ticking when the written opinion reversing the judgments was filed with the clerk.

We affirm.

Appellants present the following issue for our review:

> Where a valid execution sale has occurred, and a judgment upon which the sale was conducted is later reversed, when does the statute of limitations begin to run for an action for conversion or wrongful execution—at the date of the sale or the date the mandate reversing the judgment is returned to the district court?

## FACTS

In 1989, K. Jayarama Holla and Shirin Bhat Holla (Hollas) and F & A Enterprises (F & A) commenced two lawsuits against Kenneth E. Gillis (Gillis) and Gillis Automotive Products, Inc. (GAP), a corporation owned by Gillis. The Hollas and F & A (appellees) were awarded judgments in the district court, and they executed and levied against property of Gillis and GAP (appellants) in September and October, 1989. Appellants did not file a supersedeas bond to stay the proceedings, and an execution sale was conducted on June 22, 1990. Appellants appealed to the Wyoming Supreme Court, which consolidated the suits and reversed all judgments and orders of the district court in both suits on June 27, 1991. *See Gillis v. F & A Enterprises*, 813 P.2d 1304 (Wyo.1991). The court found the record so deficient and in such a state of confusion that it declined to decide the issues raised; the case was remanded to the district court with instructions that any additional proceedings should begin anew. The mandate to the Natrona County District Court was filed with that court on July 17, 1991.

The suits initiated by the Hollas and F & A were ultimately dismissed by the district court for failure to prosecute. On July 14, 1995, Gillis, acting pro se, filed a complaint on behalf of himself and GAP against appellees, seeking damages for the wrongful deprivation of his property. In September 1995, Gillis obtained counsel and the complaint was amended to restate the claims as wrongful execution and conversion. In the meantime, counsel for appellees moved to dismiss the complaint, arguing the applicable four-year limitations period began to run in 1989 when the property was seized and, as a result, appellants' claims were barred. The district court agreed in its decision letter filed October 20, 1995, and entered an order of dismissal on January 4, 1996. It is from this order that Gillis and GAP appeal.

## STANDARD OF REVIEW

When reviewing a W.R.C.P. 12(b)(6) dismissal, this court accepts all facts stated in the complaint as being true and

views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts that would entitle him to relief. *Rissler & McMurry Co. v. State*, 917 P.2d 1157, 1160 (Wyo.1996). Although dismissal is a drastic remedy which should be granted sparingly, a dismissal is proper where the complaint reflects that the action is barred by the applicable statute of limitations. *Feltner v. Casey Family Program*, 902 P.2d 206, 208 (Wyo.1995); *Boller v. Western Law Associates, P.C.*, 828 P.2d 1184, 1186 (Wyo.1992).

### DISCUSSION

■ The parties agree that the applicable statute of limitations governing appellants' claims is four years, as provided by W.S. 1-3-105(a)(iv)(B) (Supp.1996). The initial issue to be resolved is the date on which appellants' cause of action for wrongful execution and/or conversion accrued, thereby commencing the limitations period. Generally, a cause of action accrues as soon as a right to maintain an action arises—when the plaintiff could have first filed and prosecuted the action to successful completion. *DeWitt v. Balben*, 718 P.2d 854, 858 (Wyo.1986); 54 C.J.S. *Limitations of Actions* § 81 (1987); 51 Am.Jur.2d *Limitation of Actions* § 107 (1970).

Appellees rely on the black letter statements of law contained in both American Jurisprudence 2d and Corpus Juris Secundum to the effect that the statute of limitations for a wrongful levy, execution or seizure accrues at the time of the wrongful act, that is, on the date the levy, execution or seizure occurred. 33 C.J.S. *Executions* § 457c (1942); 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 621 (1994). However, appellees' argument fails to address the fact that the levy, seizure and subsequent sale were not wrongful when they occurred.

■ The judgments on which appellees acted were erroneous. An erroneous judgment is issued by a court with jurisdiction, but is subject to reversal on timely direct appeal. 46 Am.Jur.2d *Judgments* § 30 (1994). Although an erroneous judgment is

voidable, it is not void or an absolute nullity. *See Matter of TRG*, 665 P.2d 491, 499 (Wyo. 1983). Until reversed, a voidable judgment is binding and enforceable and "constitutes sufficient justification for all acts done in its enforcement." 46 Am.Jur.2d *Judgments* § 30.

■ Before the judgments were reversed, appellants' claims would have been premature. Until reversal, the judgments were binding and enforceable and sufficiently justified appellees' levy, seizure and sale of appellants' property. Only after reversal could appellants have first filed and prosecuted the action to successful completion. We find further support for this result in the Restatement of Restitution § 74 (1937), which states the rule that a person whose property has been taken under a judgment is entitled to restitution if the judgment is reversed or set aside unless restitution would be inequitable. Comment (n) provides that the statute of limitations runs from the time the judgment is reversed. *See also* 5 C.J.S. *Appeal and Error* §§ 996, 1001 (1993). Therefore, we hold that appellants' cause of action did not accrue until the judgments were reversed.

■ Having concluded that appellants' cause of action accrued when the judgments were reversed, we next determine at what point the reversal occurred. Our opinion reversing the original judgments was issued on June 27, 1991. Our mandate to the district court was filed in that court on July 17, 1991. Appellants filed their claim in this suit on July 14, 1995. Accordingly, when a new cause of action is created by the reversal of a judgment on appeal, we must determine whether the statute of limitations for that action begins to run on the date the written appellate opinion is issued or on the date the mandate is filed with the lower court.

This issue is one of first impression in Wyoming. We find no definitive answer to the question in other jurisdictions, in large part because of differences in applicable statutes and court rules, and also as a result of the different contexts in which the issue has arisen. *See, e.g, Williams v. Blumer*, 763 S.W.2d 242, 245 (Mo.App.1988) (preferable starting point for commencing limitations pe-

riod is filing of mandate); *Thornber v. City of Fort Walton Beach,* 622 So.2d 570, 572 (Fla. App.1993) (mandate of appellate court is final judgment in the cause); *Eldred v. Reber,* 639 So.2d 1086, 1088 (Fla.App.1994) (time begins to accrue on the date the appellate court files its decision in the underlying action rather than from date mandate is issued); *PSL Realty Co. v. Granite Inv. Co.,* 86 Ill.2d 291, 56 Ill.Dec. 368, 427 N.E.2d 563, 569–70 (1981) (appellate judgment final when entered, not on the date the mandate issued). After examining the relevant court rules and case law, we believe the logical date upon which to start the time running on the statute of limitations is the date the written appellate opinion is filed with the clerk of the supreme court.

█ Rule 9.01 of the Wyoming Rules of Appellate Procedure provides that a cause is decided when the written opinion of the appellate court is filed with the clerk. Once this court renders a decision, the lower courts are bound by that decision in deciding all future cases. Thus, precedential value attaches when the opinion is issued, not when the mandate is issued. Rules 9.03 and 9.10 require the appellate court to then send a mandate to the trial court, as the case may require, for execution. The mandate serves two purposes: 1) it communicates the decision and directions of the appellate court to the lower court, and 2) it returns to the court below the proceedings which have been brought up by the appeal, revesting jurisdiction in the lower court. *Grable v. State,* 649 P.2d 663, 670 (Wyo.1982); 5 C.J.S. *Appeal and Error* § 968 (1993). The mandate, as contrasted with the decision, is of import primarily in the proceedings that are the subject of the appeal, and it is essential where the lower court must take further action in the case.

█ Here, appellants' instituted an independent lawsuit, one which did not depend on further action in the original proceedings. Because the case involved a new matter, the district court did not need to be "revested" with jurisdiction in order to hear appellants' case. Rather, as with any other civil action, article 5, section 10 of the Wyoming Constitution governed whether the district court had jurisdiction. The complaint alleged damages sufficient to invoke the jurisdiction of the district court, and the proceedings were not vested by law exclusively in some other court. Therefore, appellants could have successfully filed their claim once the reversal was handed down. In this circumstance, the mandate date was irrelevant.

█ Nor does Wyoming's discovery rule offer appellants any relief. In Wyoming, the statute of limitations is not triggered until a plaintiff knows or has reason to know a cause of action exists. *Barlage v. Key Bank of Wyoming,* 892 P.2d 124, 126 (Wyo.1995); *Young v. Young,* 709 P.2d 1254, 1259 (Wyo.1985). The opinion rendered on June 27, 1991, informed appellants that "[a]ll judgments and orders of the district court are reversed." *Gillis,* 813 P.2d at 1308. Additionally, pursuant to court rule, the clerk is required to promptly notify the parties on each side when a decision is handed down. Sup.Ct.R. 2. As such, appellants had adequate notice that their cause of action existed when the decision was filed with the clerk, and we perceive no injustice to appellants by so holding.

### CONCLUSION

We conclude that the statute of limitations on appellants' claims for wrongful execution and conversion began to run when the judgment upon which appellees sold appellants' property was reversed by this court. The decision reversing the judgment was effective on the date the court's written opinion was filed with the clerk, June 27, 1991. Therefore, appellants' filing on July 14, 1995, exceeded the four-year statute of limitations period and their claims are barred.

Affirmed.