**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT HEMMERLE,
              *Petitioner-Appellant,*

              v.

DORA SCHRIRO; ATTORNEY
GENERAL FOR THE STATE OF
ARIZONA,

              *Respondents-Appellees.*

No. 06-16601

D.C. No.
CV-04-00315-PHX-
PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted
May 14, 2007—San Francisco, California

Filed July 19, 2007

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Michael Bernays, Phoenix, Arizona, argued the cause for the petitioner-appellant. He also filed an opening brief and a reply brief.

Alan L. Amman, Assistant Attorney General of Arizona, Criminal Appeals Section, argued the cause for the respondent-appellee and filed a brief. Also on the brief were Terry Goddard, Attorney General of Arizona and Randall M. Howe, Chief Counsel of the Arizona Criminal Appeals Section.

## OPINION

O'SCANNLAIN, Circuit Judge:

Once again, we are asked to decide whether a federal petition for writ of habeas corpus was properly dismissed as time-barred because filed outside the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations.

I

A

Robert Hemmerle was convicted after a jury trial of second-degree murder and endangerment after running a red light and killing another motorist while operating his vehicle under the influence of alcohol. He was sentenced to serve concurrent terms of 16 years on the second-degree murder conviction and 27 months on the endangerment conviction. Hemmerle filed a direct appeal in state court on November 20, 1997. He also filed a state post-conviction relief ("PCR") notice on November 21, 1997, in which he checked off a box

indicating that he was alleging ineffective assistance of his trial counsel.[1]

Hemmerle's conviction was affirmed by the Arizona Court of Appeals on October 29, 1998. The main issue raised on direct appeal was whether the trial court abused its discretion by admitting into evidence the results of a blood-alcohol content test when the State consumed most of the blood sample in its own testing procedures. Hemmerle chose not to appeal to the Arizona Supreme Court; the mandate from the direct appeal issued on December 4, 1998.

In his collateral PCR notice proceedings, Hemmerle was granted numerous extensions within which to file a brief. A final extension was asked for and granted by minute order dated September 11, 1998. On December 1, 1998, because no petition or other memoranda had been filed, Hemmerle's PCR notice was summarily dismissed. Hemmerle then filed a second PCR notice on January 4, 1999 and later filed a "Memorandum in Support of Petition for Post-Conviction Relief" in which he argued that his trial attorney, Joel Thompson, was ineffective because he instructed him to testify falsely during trial. Briefly stated, Hemmerle claimed that Thompson told him to testify that he saw signs at Toolie's Bar stating that the bar would call a cab if a patron felt he was too intoxicated to drive home. Hemmerle contended that this testimony backfired because the jury took his having seen the sign and having failed to alert the bar that he was unable to drive as evidence of extreme indifference to human life. In addition,

---

[1]Although overlapping direct and collateral appeals are unusual, they are allowed under Arizona rules. *See* Ariz. R. Crim. P. 32.4 ("In a non-capital case, the notice must be filed within ninety days of the entry of judgment and sentence or within thirty days of the order and mandate affirming the judgment and sentence on direct appeal, whichever is the later."); *Krone v. Hotham*, 890 P.2d 1149 (Ariz. 1995); *State v. Jones*, 897 P.2d 734, 735 (Ariz. Ct. App. 1995) (rejecting argument that right to file post-conviction relief petitions is suspended during the pendency of direct appeal).

Hemmerle alleged that Thompson was constitutionally ineffective because he failed to investigate and to present evidence of mental illness (namely, Hemmerle's alleged bipolar disorder) to rebut the mens rea of the second-degree murder charge.

The Superior Court of Arizona for Maricopa County rejected outright Hemmerle's claim of ineffective assistance based upon failure to investigate and to present evidence of mental illness. It found that relief on such a claim was foreclosed by *State v. Mott*, 931 P.2d 1046 (Ariz. 1997).[2] It ordered an evidentiary hearing, however, on Hemmerle's claim that Thompson instructed him to lie on the witness stand. After conducting this evidentiary hearing, the court rejected Hemmerle's argument, concluding that he could "not show that the result of the proceeding would have been different." Hemmerle petitioned the Arizona Court of Appeals to review this judgment, but on October 9, 2002, a panel of that court issued an order denying review. Hemmerle next appealed to the Arizona Supreme Court; on February 20, 2003, his petition for review was denied. The record was returned to the Court of Appeals that same day. On March 19, 2003, the Court of Appeals sent to the Clerk of Maricopa County Superior Court a certified copy of the order denying review along with transcripts and other records.

B

On February 12, 2004, Hemmerle filed a petition for writ of habeas corpus in federal district court under 28 U.S.C. § 2254. The petition contained two grounds for relief: (1) that

---

[2]In *Mott*, the Arizona Supreme Court noted that the state legislature had refused to recognize a diminished capacity defense and therefore held that "Arizona does not allow evidence of a defendant's mental disorder short of insanity either as an affirmative defense or to negate the *mens rea* element of a crime." 931 P.2d at 1051. The Arizona Supreme Court further rejected the defendant's argument that this prohibition violated due process. *Id.* (citing *Fisher v. United States*, 328 U.S. 463 (1946)).

Hemmerle's Sixth, Fifth, and Fourteenth Amendment rights to effective assistance of counsel were violated because his attorney failed to raise his bi-polar disorder at trial; and (2) that Hemmerle's Sixth and Fourteenth Amendment rights to effective assistance of counsel were violated because his attorney advised him to testify falsely at trial. In its answer to Hemmerle's petition, the State argued that the habeas petition was not filed within the one-year time limit set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). The district court allowed time for Hemmerle to file a response.

After consideration of the petition and the various replies, the magistrate judge recommended that Hemmerle's petition be dismissed in its entirety as untimely filed. The district court agreed with the determination of the magistrate judge and adopted his recommendations. The district court concluded that direct review of Hemmerle's conviction was final for purposes of AEDPA on the date that his ability to file an appeal to the Arizona Supreme Court expired and not on the date that the mandate issued. It also concluded that a 33-day gap — from December 1, 1998 until January 4, 1999 — between Hemmerle's first and second state PCR proceedings was not tolled because he failed to raise a discernable claim in his first petition to which the second petition could relate back. Finally, the district court concluded that Hemmerle's second PCR petition became final on February 20, 2003, the date the Arizona Supreme Court denied review. Accordingly, 356 days elapsed between the denial of his second PCR and the February 12, 2004 filing of his § 2254 petition. With the addition of the 33 days when no properly filed application for state post-conviction relief was pending, the district court concluded that Hemmerle's petition was untimely by 24 days.

The district court granted a certificate of appealability on its procedural rulings and Hemmerle filed a timely notice of appeal.

## II

### A

Hemmerle first challenges the district court's conclusion that his direct appeal became final on the date that his ability to seek review in the Arizona Supreme Court elapsed. He contends that the proper date for finality is the date that the mandate issued, here December 4, 1998. As support, he cites our decision in *Bunney v. Mitchell*, 262 F.3d 973 (9th Cir. 2001). The State, in contrast, argues that the limitations period runs from the date in which Hemmerle's time for seeking review of the Court of Appeals' decision with the Arizona Supreme Court expired.

**[1]** The relevant portion of the federal habeas statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A).

We had occasion to interpret this text in a similar setting in *Wixom v. Washington*, 264 F.3d 894 (9th Cir. 2001). In *Wixom*, the district court held that the defendant's conviction was "final" upon issuance of the mandate but found that his state post-conviction petition was not properly filed and therefore did not toll the statute of limitations. It dismissed his petition as time-barred. *Id.* at 896. We affirmed the dismissal, but on different grounds. We disagreed with the district court that it was the issuance of the mandate that rendered Wixom's conviction final for AEDPA purposes. *Id.* at 897. We noted

that "a mandate is not a decision terminating review" and concluded that "because the denial of his appeal is a decision terminating review, and Wixom did not appeal this denial to the Washington Supreme Court, we conclude that it marks 'the conclusion of direct review.' " *Id.* at 897-98. In an important footnote, we rejected an argument identical to that made here by Hemmerle. We explained "[t]hat the Washington courts have interpreted the term 'final' in § 10.73.090 to mean the date at which the mandate issues is their prerogative. We, as stated above, are constrained by Congress' definition of the term." *Id.* at 898 n.4; *see also Clay v. United States*, 537 U.S. 522, 531 (2003) ("The words 'by the conclusion of direct review or the expiration of the time for seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule.").

**[2]** We applied the rule of *Wixom* again in *White v. Klitzkie*, 281 F.3d 920 (9th Cir. 2002), in interpreting § 2244(d)(2). There, "White argue[d] that the Supreme Court of Guam's decision was not final until the mandate was entered on January 26, 1999." *Id.* at 924 n.4. We rejected that argument, citing *Wixom* and noting that "it is the decision of the state appellate court, rather than the ministerial act of entry of the mandate, that signals the conclusion of review." *Id.*

**[3]** Applying the plain statutory text, our decisions in *Wixom* and *White*, and the applicable Arizona rules, it is clear that Hemmerle's direct appeal was final upon the expiration of the time for seeking review of the Court of Appeals decision in the Arizona Supreme Court. *Cf. Clay*, 537 U.S. at 527 ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Hemmerle's time for seeking review expired 30 days after the Arizona Court of Appeals affirmed his conviction on October 29, 1998. *See* Ariz. R. Crim. P. 31.19(a) ("Within 30 days after the filing of a decision . . . any party

may file with the clerk of the Court of Appeals a petition for review by the Supreme Court.").

Nothing that we said in *Bunney v. Mitchell*, 262 F.3d at 973, is to the contrary. *Bunney* was interpreting 28 U.S.C. § 2244(d)(2), which defines when an application for state collateral relief is "pending." The Supreme Court instructed in *Carey v. Saffold*, 536 U.S. 214 (2002), that a collateral relief application is pending "until the application has achieved final resolution through the State's post-conviction procedures." *Id.* at 220. *Bunney* thus reached the unremarkable conclusion that because under the applicable rule in California, "a denial of a habeas petition within the California Supreme Court's original jurisdiction is not final for 30 days," the application remained "pending." 262 F.3d at 974 (citing *People v. Carrington*, 40 Cal.App.3d 647, 650 (1974)).

**[4]** Here, we are not asked to determine whether an application for relief is "pending" under § 2244(d)(2); instead, we must decide when direct review was final under § 2244(d)(1)(A). *See Clay*, 537 U.S. at 531 ("The words 'by the conclusion of direct review or the expiration of the time for seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule."). Hemmerle filed no motion for reconsideration in the Court of Appeals, nor did he file a petition for review with the Arizona Supreme Court.[3] Under § 2244(d)(1), Hemmerle's direct appeal was final on November 29, 1998, the date that he allowed his time for seeking review in the Supreme Court to expire.

---

[3]Under Ariz. R. Crim. P. 32.18(b), a motion for reconsideration must be filed within 15 days of the decision. Once that time period expired for Hemmerle, his only available recourse was to file a petition for review with the Supreme Court. He chose not to do so.

B

**[5]** Hemmerle's first PCR notice was not summarily dismissed, however, until December 1, 1998. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In *Isley v. Arizona Department of Corrections*, 383 F.3d 1054 (9th Cir. 2004), we held that in Arizona, post-conviction "proceedings begin with the filing of the Notice." *Id.* at 1055-56. Thus, where notice is filed in conformity with the pertinent Arizona statutory provisions and contains a specific prayer for relief in the form of a request for a new trial, "it is sufficient to toll the AEDPA statute of limitations." *Id.* at 1056. We conclude that Hemmerle's first PCR notice, which under *Isley* was "properly filed," tolled AEDPA's one-year statute of limitations at least until it was summarily dismissed on December 1, 1998.[4]

**[6]** The crucial question, however, is whether Hemmerle also is entitled to tolling for the period from the December 1, 1998, summary dismissal of his first PCR notice until the filing of his second PCR notice on January 4, 1999.[5] The "gap" between December 1, 1998, and January 4, 1998, is 33 days. In this circuit, we apply a two-part test to determine whether the "gap" should be tolled. *See King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003). "First, we ask whether the petitioner's

---

[4]Our recent decision in *Summers v. Schriro*, 481 F.3d 710 (9th Cir. 2007) holds that a Rule 32 "of-right" proceeding should be treated as direct and not collateral review for purposes of AEDPA's statute of limitations. Unlike the defendant in *Summers*, however, Hemmerle did not enter a guilty plea which would have forfeited his right to direct appeal. Hemmerle was convicted after a jury trial and was entitled to, and had, a full round of direct review. Thus, his Rule 32 proceedings were not "of right" and are treated as collateral review for AEDPA purposes.

[5]This is known as either "gap tolling" or "interval tolling." *See, e.g.*, *Gaston v. Palmer*, 447 F.3d 1165, 1166 (9th Cir. 2006).

subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition. If not, these petitions constitute a 'new round' and the gap between the rounds is not tolled." *Id.* (citing *Biggs v. Duncan*, 339 F.3d 1045 (9th Cir. 2003)). But, if the subsequent petition "simply attempted to correct the deficiencies" in the prior petition, we will construe the new petitions as part of the first "full round" of collateral review. *Id.* (citing *Carey v. Saffold*, 536 U.S. 214, 222 (2002)). In such circumstance, we then proceed to ask whether the petition was denied on the merits or deemed untimely. If the petition was denied on the merits, we will toll the time period between the two properly-filed petitions; if it was deemed untimely, we will not. *Id.*

Hemmerle urges that the 33-day gap should be tolled because his second PCR petition related back to the "claims" raised in his first notice and his second petition was denied on the merits. He contends that because he made clear by checking a box in his first PCR notice that he was alleging a claim of ineffective assistance of counsel, his second petition, which raised claims of ineffective assistance based upon counsel's failure to investigate his bi-polar disorder and counsel's instruction to testify falsely, was necessarily related to his initial PCR notice. He also points out that he annotated on his initial PCR that his ineffective assistance of counsel claim related to Joel Thompson.

**[7]** We are not persuaded that Hemmerle is entitled to "gap tolling" under the *King* framework. As we explained in *Isley*, the purpose of a PCR notice is not to set forth the facts or legal citations regarding a claim, but is to make a simple request for relief from judgment, in order to alert the state court that "it might need to appoint counsel." 383 F.3d at 1055. Hemmerle's first PCR notice, unaccompanied by any supporting documentation or factual elaboration, was insufficient to raise a claim to which the second petition could relate back. Although Hemmerle's petition may have been "properly filed" under our decision in *Isley*, that says nothing about the

merits of the claim or claims that are raised in the petition. *See Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000) (distinguishing between the application, which may or may not have been properly filed, and the claims raised therein). Because ineffective assistance claims are not fungible, but are instead highly fact-dependent, some baseline explication of the facts relating to an ineffective assistance claim is required in the original petition to allow the court to apply the *King v. Roe* framework.

**[8]** Indeed, we have recognized in the context of exhaustion that all operative facts to an ineffective assistance claim must be presented to the state courts in order for a petitioner to exhaust his remedies. *See Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (holding that petitioner's statement of ineffective assistance of counsel "lacked the specificity and explicitness required for the purported federal constitutional dimension of such claims to have been 'fairly presented' to the Nevada courts under our precedent"), *as modified by* 247 F.3d 904 (9th Cir. 2001); *see also Picard v. Connor*, 404 U.S. 270, 278 (1971) (exhaustion requirement satisfied where all operative facts giving rise to asserted constitutional principle were raised in state court). Similarly in this context, in order for us to apply the *King* framework and to conclude that the second petition is "limited to an elaboration of the facts relating to the claims in the first petition," 340 F.3d at 823, we must know the nature of the original claims and at least some of the facts relating to those claims. The vague assertion of ineffective assistance in Hemmerle's first PCR notice, where it was never further developed by a petition or substantive memorandum, is insufficient to raise a "claim" to which the *King* framework can be applied.

**[9]** We recognize that interval tolling, as defined by *King*, will often involve an incomplete or insufficient first petition that is corrected or embellished by a subsequent petition, and our pleading standard is not meant to eviscerate interval tolling. But in Arizona, the framework for collateral review

requires the filing of a preliminary notice to begin the proceedings; it also presupposes that an actual petition will be forthcoming. In contrast to *King*, in this case Hemmerle's first round of post-conviction relief was dismissed not because his petition was incomplete, but because he had failed to include a petition at all. Indeed, his notice form alone was not even construed as a pleading by the state court. Therefore, the second petition did not "correct" or "remediate deficiencies" in the first petition, *see id.*; rather, it stated the claims for the first time.[6]

This conclusion is buttressed by the fact that the state superior court deemed Hemmerle's second PCR not a successive pleading. It concluded that Hemmerle's second PCR proceeding could go forward because she found "that these issues [the ineffective assistance claims raised in the second petition] *have not been raised in any Petition* or in the appeal. Thus Petitioner is not precluded from raising these issues." (emphasis added.) In effect, the superior court determined that Hemmerle had not raised these claims in his first PCR notice because he never put forth the facts relating to Joel Thompson's alleged ineffective assistance.

**[10]** In sum, because Hemmerle failed to allege with any specificity the nature of his ineffective assistance claims in his first PCR notice, the second PCR petition cannot "relate back" to the first petition. Gap tolling is therefore not appro-

---

[6]Hemmerle argues that he sufficiently stated a claim by hand-writing "Joel Thompson" on his first PCR notice, because he was essentially restating the arguments he made in his motion for a new trial. Although we construe pro se filings broadly, reading the first notice form to incorporate arguments made in the earlier motion, when the motion is not referenced or cited in the notice form itself, would create a broad rule of incorporation that the law does not support. *Cf. Baldwin v. Reese*, 541 U.S. 27, 33 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so.").

priate and the 33 days between the summary dismissal of Hemmerle's first PCR petition and the filing of his second PCR notice must be counted towards § 2241(d)(1)'s one-year filing deadline.

C

Finally, we must determine the date on which Hemmerle's second PCR proceedings became final. Again, Hemmerle contends that the issuance of the mandate is the critical date; he further contends that the Clerk of the Arizona Court of Appeals' March 19, 2003, letter mailing a certified copy of the Supreme Court's order denying review is such a mandate. The State disagrees, instead arguing that the decision terminating review, in this case the February 20, 2003, denial of the petition by the Supreme Court, restarted the AEDPA limitations clock.

[11] The Supreme Court has held that an application for state collateral review "is pending as long as the ordinary state collateral review process is 'in continuance' — *i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' " *Carey*, 536 U.S. at 219-20. In Arizona, collateral proceedings are governed by Arizona Rule of Criminal Procedure 32. Rule 32.9(h) states that "[w]hen the matter is determined, the clerk of the appellate court shall return the record to the appropriate trial court for retention according to law." This function, which was performed on March 19, 2003, by the Clerk of the Court of Appeals, is not equivalent to the issuance of the mandate. Indeed, there is no requirement that the appeals court wait a certain amount of time before sending the record back. The only guidance from Rule 32.9(h) is "when the matter is determined."

[12] It is clear to us that the collateral proceeding "was determined" on February 20, 2003, when the Arizona

Supreme Court denied Hemmerle's petition for review.**7** Again, nothing in *Bunney* compels a contrary result. The California rule in *Bunney* provided that "[a] decision of the Supreme Court becomes final 30 days after filing." 262 F.3d at 974. But Arizona's Rule 32.9(h) governing collateral review does not delay the judgment in this way; instead, it only provides for a ministerial function in the state appellate court that when the "matter is determined," the record should be returned to the trial court. *See White*, 281 F.3d at 923 & 924 n.4 (rejecting an identical argument and concluding that the Supreme Court of Guam's denial of White's habeas petition "ended statutory tolling of the statute of limitations under § 2244(d)(2), and the one-year statute of limitations began to run").

**[13]** Here, the matter was determined by the Arizona Supreme Court on February 20, 2003, when it denied review. There was nothing left for it to do and it thus returned the record to the appeals court. The subsequent March 19, 2003, letter from the clerk of the court of appeals was not a mandate, but instead was the performance of a ministerial function of returning the record to the trial court. We conclude that after the February 20, 2003, denial by the Arizona Supreme Court, nothing remained "pending" for purposes of § 2244(d)(2). Accordingly, the statute of limitations set forth in § 2244(d)(1) began running again on this date.

III

**[14]** We are left only to calculate the amount of time that elapsed on Hemmerle's one-year statute of limitations. From

---

**7**That same day a letter was sent from the Clerk of the Arizona Supreme Court indicating that Hemmerle's petition for review had been denied. The letter, which announced the decision to deny review, was sent to all parties involved, including both Hemmerle and his counsel. That letter confirms our view that there was nothing left to be determined by the Arizona Supreme Court.

December 1, 1998, to January 4, 1999, 33 days ran off of the clock. From February 20, 2003, until his § 2254 petition was filed on February 12, 2004, 356 days elapsed. We must therefore conclude that because a total of 389 days elapsed, Hemmerle's petition was not timely under 28 U.S.C. § 2244(d)(1). The decision of the district court is

**AFFIRMED.**