Justice Sotomayor
delivered the opinion of the Court.
This case interprets two provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The first, 28 U. S. C. § 2253(c), provides that a habeas petitioner must obtain a certificate of appealability (COA) to appeal a federal district court’s final order in a habeas proceeding. § 2253(c)(1). The COA may issue only if the petitioner has made a “substantial showing of the denial of a constitu­tional right,” § 2253(c)(2), and “shall indicate which specific issue” satisfies that showing, § 2253(c)(3). We hold that § 2253(c)(3) is not a jurisdictional requirement. Accordingly, a judge’s failure to “indicate” the requisite constitutional issue in a COA does not deprive a court of appeals of subject-matter jurisdiction to adjudicate the habeas petition­er’s appeal.
The second provision, 28 U. S. C. § 2244(d)(1)(A), estab­lishes a 1-year limitations period for state prisoners to file federal habeas petitions, running from “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.” We hold that, for a state prisoner who does not seek review in a State’s highest court, the judgment becomes “final” on the date that the time for seeking such review expires.
*138 [[Image here]]
Petitioner Rafael Gonzalez was convicted of murder m Texas state court. The intermediate state appellate court, the Texas Court of Appeals, affirmed Gonzalez’s conviction on July 12,2006. Gonzalez then allowed his time for seeking discretionary review with the Texas Court of Criminal Ap­peals (Texas CCA) — the State’s highest court for criminal appeals — to expire on August 11, 2006. Tex. Rule App. Proc. 68.2(a) (2011). The Texas Court of Appeals issued its mandate on September 26, 2006.
After Gonzalez, proceeding pro se, petitioned unsuccess­fully for state habeas relief, he filed a federal habeas petition under 28 U. S. C. § 2254 on January 24, 2008, in the U. S. Dis­trict Court for the Northern District of Texas. His petition alleged, inter alia, that the nearly 10-year delay between his indictment and trial violated his Sixth Amendment right to a speedy trial. The District Court, without discussing Gonzalez’s constitutional claims, dismissed Gonzalez’s peti­tion as time barred by the 1-year statute of limitations in § 2244(d)(1)(A). Although Gonzalez argued that his judg­ment had not become final until the Texas Court of Appeals issued its mandate, the District Court held that Gonzalez’s judgment had become final when his time for seeking discre­tionary review in the Texas CCA expired on August 11, 2006. Counting from that date, and tolling the limitations period for the time during which Gonzalez’s state habeas petition was pending, Gonzalez’s limitations period elapsed on De­cember 17, 2007 — over a month before he filed his federal habeas petition. The District Court denied a COA.
Gonzalez applied to the U. S. Court of Appeals for the Fifth Circuit for a COA on two grounds: (1) his habeas peti­tion was timely, and (2) his Sixth Amendment speedy-trial right was violated. A Court of Appeals Judge granted a COA on the question “whether the habeas application was timely filed because Gonzalez’s conviction became final, and thus the limitation^] period commenced, on the date the in­ *139 termediate state appellate court issued its mandate.” App. 347. The COA did not mention the Sixth Amendment question.
The Court of Appeals affirmed. 623 F. 3d 222 (2010). Ac­knowledging that a sister Circuit had run the limitations period from the date of a state court’s issuance of a mandate, the Court of Appeals deemed the mandate’s issuance “irrele­vant” to determining finality under § 2244(d)(1)(A). Id., at 224, 226 (disagreeing with Riddle v. Kerrma, 523 F. 3d 850 (CA8 2008) (en banc)). The Court of Appeals held that be­cause a judgment becomes final at “the conclusion of direct review or the expiration of the time for seeking such re­view,” § 2244(d)(1)(A), the limitations period begins to run for petitioners who fail to appeal to a State’s highest court when the time for seeking further direct review in the state court expires. The Court of Appeals therefore concluded that Gonzalez’s conviction became final on August 11, 2006, and his habeas petition was time barred.
The Court of Appeals did not address Gonzalez’s Sixth Amendment claim or discuss whether the COA had been im­properly issued. Nor did the State allege any defect in the COA or move to dismiss for lack of jurisdiction.
Gonzalez petitioned this Court for a writ of certiorari. In its brief in opposition, the State argued for the first time that the Court of Appeals lacked jurisdiction to adjudicate Gonzalez’s appeal because the COA identified only a proce­dural issue, without also “indicating]” a constitutional issue as required by § 2253(c)(3). We granted certiorari to decide two questions, both of which implicate splits in authority: (1) whether the Court of Appeals had jurisdiction to adjudi­cate Gonzalez’s appeal, notwithstanding the § 2253(c)(3) de­fect;[1] and (2) whether Gonzalez’s habeas petition was time *140 barred under § 2244(d)(1) due to the date on which his judg­ment became final.[2] 564 U. S. 1003 (2011).
II
We first consider whether the Court of Appeals had juris­diction to adjudicate Gonzalez’s appeal.
A
Section 2253, as amended by AEDPA, governs appeals in habeas corpus proceedings. The first subsection, § 2253(a), is a general grant of jurisdiction, providing that district courts’ final orders in habeas proceedings “shall be subject to review, on appeal, by the court of appeals.” 28 U. S. C. § 2253(a). The second, § 2253(b), limits jurisdiction over a particular type of final order. See § 2253(b) (“There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant [of] remov[al] . . . ”). This case concerns the third, § 2253(c), which provides:
“(1) Unless a circuit justice or judge issues a certifi­cate of appealability, an appeal may not be taken to the court of appeals . ..
[[Image here]]
“(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substan­tial showing of the denial of a constitutional right.
“(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).”
When, as here, the district court denies relief on procedural grounds, the petitioner seeking a COA must show both “that *141 jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.” Slack v. McDaniel, 529 U. S. 473, 484 (2000).
In this case, the Court of Appeals Judge granted a COA that identified a debatable procedural ruling, but did not “in­dicate” the issue on which Gonzalez had made a substantial showing of the denial of a constitutional right, as required by § 2253(c)(3). The question before us is whether that defect deprived the Court of Appeals of the power to adjudicate Gonzalez’s appeal. We hold that it did not.
This Court has endeavored in recent years to “bring some discipline” to the use of the term “jurisdictional.” Hender­son v. Shinseki, 562 U. S. 428, 435 (2011). Recognizing our “less than meticulous” use of the term in the past, we have pressed a stricter distinction between truly jurisdictional rules, which govern “a court’s adjudicatory authority,” and nonjurisdictional “claim-processing rules,” which do not. Kontrick v. Ryan, 540 U. S. 443, 454-455 (2004). When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented. See United States v. Cot­ton, 535 U. S. 625, 630 (2002). Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objec­tion may lead a court midway through briefing to dismiss a complaint in its entirety. “[M]any months of work on the part of the attorneys and the court may be wasted.” Hen­derson, 562 U. S., at 435. Courts, we have said, should not lightly attach those “drastic” consequences to limits Con­gress has enacted. Ibid.
We accordingly have applied the following principle: A rule is jurisdictional “[i]f the Legislature clearly states that a threshold limitation on a statute’s scope shall count as ju­risdictional.” Arbaugh v. Y & H Corp., 546 U. S. 500, 515 *142 (2006). But if “Congress does not rank a statutory limita­tion on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional.” Id., at 516.[3] That dear-­statement principle makes particular sense in this statute, as we consider — against the backdrop of § 2253(a)’s clear ju­risdictional grant to the courts of appeals and § 2253(b)’s clear limit on that grant — the extent to which Congress in­tended the COA process outlined in § 2253(c) to further limit the courts of appeals’ jurisdiction over habeas appeals.
Here, the only “clear” jurisdictional language in § 2253(c) appears in § 2253(c)(1). As we explained in Miller-El v. Cockrell, 537 U. S. 322 (2003), §2253(c)(l)’s plain terms— “Unless a circuit justice or judge issues a certificate of ap-­pealability, an appeal may not be taken to the court of appeals” — establish that “until a COA has been issued fed­eral courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.” Id., at 336. The par­ties thus agree that § 2253(c)(1) is jurisdictional.
*143 The parties also agree that § 2253(c)(2) is nonjurisdic-­tional.[4] That is for good reason. Section 2253(c)(2) speaks only to when a COA may issue — upon “a substantial showing of the denial of a constitutional right.” It does not contain §2253(c)(l)’s jurisdictional terms. See Russello v. United States, 464 U. S. 16, 23 (1983) (“[WJhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally . . . ”). And it would be passing strange if, after a COA has issued, each court of appeals adjudicating an appeal were dutybound to revisit the threshold showing and gauge its “substantial[ity]” to verify its jurisdiction. That inquiry would be largely duplicative of the merits question before the court.
It follows that § 2253(c)(3) is nonjurisdictional as well. Like § 2253(c)(2), it too reflects a threshold condition for the issuance of a COA — the COA’s indication of “which specific issue or issues satisfy the showing required by paragraph (2).” It too “does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [appeals] courts.” Ar-­baugh, 546 U. S., at 515 (internal quotation marks omitted). The unambiguous jurisdictional terms of §§ 2253(a), (b), and (c)(1) show that Congress would have spoken in clearer terms if it intended § 2253(c)(3) to have similar jurisdictional force. Instead, the contrast underscores that the failure to obtain a COA is jurisdictional, while a COA’s failure to indi­cate an issue is not. A defective COA is not equivalent to the lack of any COA.
It is telling, moreover, that Congress placed the power to issue CO As in the hands of a “circuit justice or judge.”[5] It *144 would seem somewhat counterintuitive to render a panel of court of appeals judges powerless to act on appeals based on COAs that Congress specifically empowered one court of appeals judge to grant. Indeed, whereas § 2253(c)(2)’s substantial-showing requirement at least describes a burden that “the applicant” seeking a COA bears, § 2253(c)(3)’s indi­cation requirement binds only the judge issuing the COA. Notably, Gonzalez advanced both the timeliness and Sixth Amendment issues in his application for a COA. A peti­tioner, having successfully obtained a COA, has no control over how the judge drafts the COA and, as in Gonzalez’s case, may have done everything required of him by law. That fact would only compound the “unfai[r] prejudice” re­sulting from the sua sponte dismissals and remands that ju­risdictional treatment would entail. Henderson, 562 U. S., at 434.[6]
Treating § 2253(c)(3) as jurisdictional also would thwart Congress’ intent in AEDPA “to eliminate delays in the fed­eral habeas review process.” Holland v. Florida, 560 U. S. *145 631,648 (2010). The COA process screens out issues unwor­thy of judicial time and attention and ensures that frivolous claims are not assigned to merits panels. Once a judge has made the determination that a COA is warranted and re­sources are deployed in briefing and argument, however, the COA has fulfilled that gatekeeping function. Even if ad­ditional screening of already-issued COAs for § 2253(c)(3) defects could further winnow the cases before the courts of appeals, that would not outweigh the costs of further delay from the extra layer of review. This case, in which the al­leged defect would be dispositive, exemplifies those ineffi­ciencies; the State requests that we vacate and remand with instructions to dismiss the appeal based on a § 2253(c)(3) de­fect that it raised for the first time in response to a petition for certiorari. And delay would be particularly fruitless in the numerous cases where, as here, the district court dismissed the petition on procedural grounds and the court of appeals affirms, without having to address the omitted constitutional issue at all.
B
The State, aided by the United States as amicus curiae, makes several arguments in support of jurisdictional treat­ment of § 2253(c)(3). None is persuasive.
First, the State notes that although § 2253(c)(3) does not speak in jurisdictional terms, it refers back to § 2253(c)(1), which does. The State argues that it is as if § 2253(c)(1) pro­vided: “Unless a circuit justice or judge issues a certificate of appealability that shall indicate the specific issue or is­sues that satisfy the showing required by paragraph (2), an appeal may not be taken to the court of appeals.” The prob­lem is that the statute provides no such thing. Instead, Con­gress set off the requirements in distinct paragraphs and, rather than mirroring their terms, excluded the jurisdictional terms in one from the other. Notably, the State concedes that § 2253(c)(2) is nonjurisdictional, even though it too cross-­references § 2253(c)(1) and is cross-referenced by § 2253(c)(3).
*146 Second, the State seizes on the word “shall” in § 2253(c)(3), arguing that an omitted indication renders the COA no COA at all. But calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored. If a party timely raises the COA’s failure to indi­cate a constitutional issue, the court of appeals panel must address the defect by considering an amendment to the COA or remanding to the district judge for specification of the issues.[7] This Court, moreover, has long “rejected the notion that ‘all mandatory prescriptions, however emphatic, are .. . properly typed jurisdictional.’” Henderson, 562 U. S., at 439; see also Dolan v. United States, 560 U. S. 605, 620 (2010) (statute’s reference to “ ‘shall’ ” alone does not render statutory deadline jurisdictional). Nothing in § 2253(c)(3)’s prescription establishes that an omitted indication should re­main an open issue throughout the case.
Third, the United States argues that the placement of § 2253(c)(3) in a section containing jurisdictional provisions signals that it too is jurisdictional. In characterizing cer­tain requirements as nonjurisdictional, we have on occasion observed their “‘separation]’” from jurisdictional provi­sions. E. g., Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 162 (2010); Arbaugh, 546 U. S., at 515. The converse, how­ *147 ever, is not necessarily true: Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdic­tional hurdle. In fact, § 2253(c)(3)’s proximity to §§ 2253(a), (b), and (c)(1) highlights the absence of clear jurisdictional terms in § 2253(c)(3).
Finally, the State analogizes a COA to a notice of appeal, pointing out that both a notice and its contents are jurisdic­tional prerequisites. Federal Rule of Appellate Procedure 3(c)(1) provides that a notice of appeal must: “(A) specify the party or parties taking the appeal”; “(B) designate the judgment, order, or part thereof being appealed”; and “(C) name the court to which'the appeal is taken.” We have held that “Rule 3’s dictates are jurisdictional in nature.” Smith v. Barry, 502 U. S. 244, 248 (1992).
We reject this analogy. We construed the content re­quirements for notices of appeal as jurisdictional because we were “convinced that the harshness of our construction [wa]s ‘imposed by the legislature.’ ” Torres v. Oakland Scavenger Co., 487 U. S. 312, 318 (1988). Rule 4, we noted, establishes mandatory time limits for filing a notice of appeal. Excus­ing a failure to name a party in a notice of appeal, in violation of Rule 3, would be “equivalent to permitting courts to ex­tend the time for filing a notice of appeal,” in violation of Rule 4. Id., at 315. And “time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century.” Bowles v. Russell, 551 U. S. 205, 209, n. 2 (2007). Accordingly, the Advisory Committee Note “makes no distinction among the various requirements of Rule 3 and Rule 4,” treating them “as a single jurisdictional threshold.” Torres, 487 U. S., at 315; see also id., at 316 (“[T]he Advisory Committee viewed the requirements of Rule 3 as jurisdictional in nature”). Here, we find no similar basis for treating the paragraphs of § 2253(c) as a single juris­dictional threshold.
Moreover, in explaining why the naming requirement was jurisdictional in Torres, we reasoned that an unnamed party *148 leaves the notice’s “intended recipients]” — the appellee and court — “unable to determine with certitude whether [that party] should be bound by an adverse judgment or held liable for costs or sanctions.” Id., at 318. The party could sit on the fence, await the outcome, and opt to participate only if it was favorable. That possibility of gamesmanship is not present here. Unlike the party who fails to submit a compli­ant notice of appeal, the habeas petitioner who obtains a COA cannot control how that COA is drafted.[8] And whereas a party’s failure to be named in a notice of appeal gives absolutely no “notice of [his or her] appeal,” a judge’s issuance of a COA reflects his or her judgment that the ap­peal should proceed and supplies the State with notice that the habeas litigation will continue.
Because we conclude that § 2253(c)(3) is a nonjurisdictional rule, the Court of Appeals had jurisdiction to adjudicate Gon­zalez’s appeal.
Ill
We next consider whether Gonzalez’s habeas petition was time barred. AEDPA establishes a 1-year limitations pe­riod for state prisoners to file for federal habeas relief, which “run[s] from the latest of” four specified dates.[9] § 2244(d)(1). *149 This case concerns the first of those dates: “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such re­view.” § 2244(d)(1)(A). The question before us is when the judgment becomes “final” if a petitioner does not appeal to a State’s highest court.
A
In construing the language of § 2244(d)(1)(A), we do not write on a blank slate. In Clay v. United States, 537 U. S. 522 (2003), we addressed AEDPA’s statute of limitations for federal prisoners seeking postconviction relief. See § 2255(f)(1) (2006 ed., Supp. IV) (beginning 1-year period of limitations from “the date on which the judgment of con­viction becomes final”). We held that the federal judgment becomes final “when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari,” or, if a petitioner does not seek certiorari, “when the time for filing a certiorari petition expires.” Id., at 527. In so holding, we rejected the argument that, if a petitioner declines to seek certiorari, the limitations period “starts to run on the date the court of appeals issues its mandate.” Id., at 529.
In Jimenez v. Quarterman, 555 U. S. 113 (2009), we de­scribed Clay's, interpretation as comporting “with the most natural reading of the statutory text” and saw “no reason to depart” from it in “construing the similar language of § 2244(d)(1)(A).” 555 U. S., at 119. The state court had per­mitted Jimenez to file an out-of-time direct appeal. We held that this “reset” the limitations period; Jimenez’s judgment would now become final at “the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking re­ *150 view of that [out-of-time] appeal.” Id., at 120-121. Be­cause Jimenez did not seek certiorari, we made no mention of when the out-of-time appeal “conclu[ded].” Rather, we held that his judgment became final when his “time for seek­ing certiorari review in this Court expired.” Id., at 120. Nor did we mention the date on which the state court issued its mandate. Both Clay and Jimenez thus suggested that the direct review process either “concludes” or “expires,” de­pending on whether the petitioner pursues or forgoes direct appeal to this Court.
We now make clear what we suggested in those cases: The text of § 2244(d)(1)(A), which marks finality as of “the conclusion of direct review or the expiration of the time for seeking such review,” consists of two prongs. Each prong— the “conclusion of direct review” and the “expiration of the time for seeking such review” — relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the “conclusion of direct review” — when this Court affirms a con­viction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the “ex­piration of the time for seeking such review” — when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that be­cause Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State’s highest court expired.
B
Gonzalez offers an alternative reading of § 2244(d)(1)(A): Courts should determine both the “conclusion of direct re­view” and the “expiration of the time for seeking such re­view” for every petitioner who does not seek certiorari, then start the 1-year clock from the “latest of” the two dates. Gonzalez rejects our uniform definition of the “conclusion of direct review” as the date on which this Court affirms a con-­ *151 vietion on the merits or denies a petition for certiorari. In his view, whenever a petitioner does not seek certiorari, the “conclusion of direct review” is the date on which state law marks finality — in Texas, the date on which the mandate is­sues. Ex parte Johnson, 12 S. W. 3d 472, 473 (Crim. App. 2000) (per curiam). Applying this approach, Gonzalez con­tends that his habeas petition was timely because his direct review “concluded” when the mandate issued (on September 26, 2006), later than the date on which his time for seeking Texas CCA review “expired” (August 11,2006). We find his construction of the statute unpersuasive.
First, Gonzalez lacks a textual anchor for his later-in-time approach. The words “latest of” do not appear anywhere in § 2244(d)(1)(A). Rather, they appear in § 2244(d)(1) and refer, to the “latest of” the dates in subparagraphs (A), (B), (C), and (D) — the latter three of which are inapplicable here. Nothing in § 2244(d)(1)(A) contemplates any conflict between the “conclusion of direct review” and the “expiration of the time for seeking such review,” much less instructs that the later of the two shall prevail.
Nor is Gonzalez’s later-in-time reading necessary to give both prongs of § 2244(d)(1)(A) full effect. Our reading does so by applying one “or” the other, depending on/whether the direct review process concludes or expires. Treating the judgment as final on one date “or” the other is consistent with the disjunctive language of the provision.
Second, Gonzalez misreads our precedents. Gonzalez as­serts that in Jimenez, we made a later-in-time choice be­tween the two prongs. That is mistaken. Rather, we chose between two “expiration” dates corresponding to different appeals: Jimenez initially failed to appeal to the Texas Court of Appeals and that appeal became final when his “time for seeking discretionary review ... expired.” 565 U. S., at 117, 119. When Jimenez was later allowed to file an out-of-time appeal, he pursued appeals with both the Texas Court of Appeals and Texas CCA; the out-of-time appeal thus became *152 final when his “[t]ime for seeking certiorari review . . . with this Court expired.” Id., at 116, 120. We adopted the out-­of-time appeal’s date of finality over the initial appeal’s date of finality. Id., at 119-121. Critically, by deeming the ini­tial appeal final at the expiration of time for seeking review in state court, and the out-of-time appeal final at the expira­tion of time for seeking certiorari in this Court, we rein­forced Clay’s suggestion that the “expiration” prong governs all petitioners who do not pursue direct review all the way to this Court.[10]
Third, Gonzalez argues that AEDPA’s federalism concerns and respect for state-law procedures mean that we should not read § 2244(d)(1)(A) to disregard state law. We agree. That is why a state court’s reopening of direct review will reset the limitations period. 555 U. S., at 121. That is also why, just as we determine the “expiration of the time for seeking [direct] review” from this Court’s filing deadlines when petitioners forgo certiorari, we look to state-court fil­ing deadlines when petitioners forgo state-court appeals. Referring to state-law procedures in that context makes sense because such deadlines are inherently court specific. There is no risk of relying on “state-law rules that may differ from the general federal rule.” Clay, 537 U. S., at 531.
By contrast, Gonzalez urges us to scour each State’s laws and cases to determine how it defines finality for every peti­tioner who forgoes a state-court appeal. That approach would usher in state-by-state definitions of the conclusion of direct review. It would be at odds with the uniform defini­tion we adopted in Clay and accepted in the § 2244(d)(1)(A) context in Jimenez. And it would pose serious administra-­ *153 bility concerns. Even if roughly “half of the States define the conclusion of direct review as the issuance of the man­date or similar process,” Brief for Petitioner 40, that still leaves half with either different rules or no settled rules at all.[11]
Fourth, Gonzalez speculates that our reading will rob some habeas petitioners of the full 1-year limitations period. Gonzalez asserts that our reading starts the clock running from the date that his time for seeking Texas CCA review expired, even though, under Texas law, he could not file for state habeas relief until six weeks later, on the date the Texas Court of Appeals issued its mandate. Tex. Code Crim. Proc. Ann., Art. 11.07, § 3(a) (Vernon Supp. 2011). His inability to initiate state habeas proceedings during those six weeks, he argues, reduced his 1-year federal habeas filing period by six weeks. We expect, however, that it will be a rare situation where a petitioner confronting similar state laws faces a delay in the mandate’s issuance so excessive that it prevents him or her from filing a federal habeas petition within a year.[12] A petitioner who has exhausted his or her claims in state court need not await state habeas proceedings to seek federal habeas relief on those claims. To the extent a petitioner has had his or her federal filing period severely truncated by a delay in the mandate’s issuance and has unex-­hausted claims that must be raised on state habeas review, *154 such a petitioner could file a request for a stay and abeyance from the federal district court. See Rhines v. Weber, 544 U. S. 269, 277 (2005).
Finally, Gonzalez argues, as an alternative to his later-in-­time construction, that his petition should be considered timely because it was filed within a year of when his time for seeking this Court’s review — as opposed to the Texas CCA’s review — expired. We can review, however, only judgments of a “state court of last resort” or of a lower state court if the “state court of last resort” has denied discretionary re­view. This Court’s Rule 13.1; see also 28 U. S. C. § 1257(a) (2006 ed.). Because Gonzalez did not appeal to the Texas CCA, this Court would have lacked jurisdiction over a peti­tion for certiorari from the Texas Court of Appeals’ decision affirming Gonzalez’s conviction. We therefore decline to in­corporate the 90-day period for seeking certiorari in deter­mining when Gonzalez’s judgment became final.
* * *
In sum, we hold that § 2253(c)(3) is a mandatory but nonju-­risdictional rule. Here, the COA’s failure to “indicate” a constitutional issue did not deprive the Court of Appeals of jurisdiction to adjudicate Gonzalez’s appeal. We further hold that, with respect to a state prisoner who does not seek review in a State’s highest court, the judgment becomes “final” under § 2244(d)(1)(A) when the time for seeking such review expires — here, August 11, 2006. We thus agree with the Court of Appeals that Gonzalez’s federal habeas petition was time barred.
For the reasons stated, the judgment of the Court of Ap­peals for the Fifth Circuit is

Affirmed.

 The Circuits have divided over whether a defect in a COA is a jurisdic­tional bar. Compare, e. g., Phelps v. Alameda, 366 F. 3d 722, 726 (CA9 2004) (no); Porterfield v. Bell, 258 F. 3d 484, 485 (CA6 2001) (no); Young v. United States, 124 F. 3d 794, 798-799 (CA7 1997) (no), with United States v. Cepero, 224 F. 3d 256, 259-262 (CA3 2000) (en banc) (yes).

 The Circuits have divided over when a judgment becomes final if a petitioner forgoes review in a State’s highest court. Compare, e. g., 623 F. 3d 222, 226 (CA5 2010) (case below) (date when time for seeking such review expires); Hemmerle v. Schriro, 495 F. 3d 1069, 1073-1074 (CA9 2007) (same), with Riddle v. Kemna, 523 F. 3d 850, 855-856 (CA8 2008) (en banc) (date when state court issues its mandate).

 We have also held that “context, including this Court’s interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional.” Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154,168 (2010). Here, however, even though the requirement of a COA (or its predecessor, the certificate of probable cause (CPC)) dates back to 1908, Congress did not enact the indication requirement until 1996. There is thus no “long line of this Court’s decisions left undisturbed by Congress” on which to rely. Union Pacific R. Co. v. Locomotive Engi­neers, 558 U. S. 67, 82 (2009).
The issuance of a CPC, like the issuance of a COA, was jurisdictional. Contrary to the dissent’s assertions, post, at 161-163 (opinion of Scalia, J.), that fact does not suggest that the indication requirement is jurisdic­tional as well. If anything, the inference runs the other way. For nearly a century, a judge’s granting or withholding of a CPC, absent any indica­tion of issues, was the fully effective “expression of opinion,” post, at 161, required for an appeal to proceed. AEDPA’s new requirement that judges indicate the specific issues to be raised on appeal has no prede­cessor provision — indeed, it is the primary difference between a CPC and COA.

 The United States as amicus curiae contends that § 2253(e)(2) is juris­dictional, but the State concedes that it is not. Tr. of Oral Arg. 31.

 The courts of appeals uniformly interpret “circuit justice or judge” to encompass district judges. See United States v. Mitchell, 216 F. 3d 1126, 1129 (CADC 2000) (collecting cases); Fed. Rule App. Proc. 22(b). Habeas *144 Corpus Rule 11(a) requires district judges to decide whether to grant or deny a COA in the first instance.

 That fact also distinguishes the indication requirement from every “similar provisio[n]” that the dissent claims we have deemed jurisdictional. Post, at 159. None of our cases addressing those provisions, moreover, recognized or relied on the sweeping “rule” that the dissent now invokes, whereby this Court should enforce as jurisdictional all “procedural condi­tions for appealing a case from one Article III court to another.” Ibid.; but see, e. g., post, at 160, n. 2 (conceding that the “rule” does not apply to criminal appeals); Becker v. Montgomery, 532 U. S. 757, 763 (2001) (failure to sign notice of appeal is a nonjurisdictional omission). All the cases, meanwhile, involved time limits (save one involving Federal Rule of Ap­pellate Procedure 3(e)(1), which we address infra). In Bowles v. Russell, 551 U. S. 205 (2007), we emphasized our “century’s worth of precedent” for treating statutory time limits on appeals as jurisdictional, id., at 209, n. 2, but even “Bowles did not hold ... that all statutory conditions imposing a time limit should be considered jurisdictional,” Reed Elsevier, 559 U. S., at 167. This case, in any event, involves a different type of procedural condition.

 The dissent’s insistence that there is “no practical, real-world effect” to treating this rule as mandatory, post, at 158, ignores the real world. Courts of appeals regularly amend COAs or remand for specification of issues, notwithstanding the supposed potential to “embarras[s] a col­league.” Ibid.; see, e. g., Saunders v. Senkowski, 587 F. 3d 543, 545 (CA2 2009) (per curiam) (amending COA to add issue); United States v. Weaver, 195 F. 3d 52, 53 (CADC 1999) (remanding for specification of issues). The government frequently alleges COA defects as grounds for dismissal (as the State did here, at this late stage), apparently not sharing the dissent’s concern that such efforts “yield nothing but additional litigation ex­penses.” Post, at 158; see, e. g., Porterfield, 258 F 3d, at 485; Cepero, 224 F 3d, at 257. Habeas petitioners, too, have every incentive to request that defects be resolved, not only to defuse potential problems later in the litigation, but also to ensure that the issue on which they sought appeal is certified and will receive full briefing and consideration.

 The dissent claims that we fail to give stare decisis effect to Torres. Post, at 163-164. Setting aside the fact that Torres involved an unrelated Federal Rule featuring a different textual, contextual, and historical back­drop, the dissent notably fails to grapple with — indeed, its opinion is bereft of quotation to — any supporting reasoning in that opinion. That reason­ing is simply not applicable here.

 Title 28 U. S. C. § 2244(d)(1) provides:
“A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
“(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
“(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
*149 “(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to eases on collat­eral review; or
“(D) the date on which the factual predicate of the claim or claims pre­sented could have been discovered through the exercise of due diligence.”

 Gonzalez also argues that Lawrence v. Florida, 549 U. S. 327 (2007), supports his focus on the state court’s issuance of the mandate because it referred to a mandate in determining when state postconviction proceed­ings were no longer pending. Lawrence, however, is inapposite. The case involved a different provision, 28 U. S. C. § 2244(d)(2), which by its terms refers to “State” procedures.

 Compare, e. g., PSL Realty Co. v. Granite Inv. Co., 86 Ill. 2d 291, 304, 427 N. E. 2d 563, 569 (1981) (judgment is final “when entered”); Gillis v. F & A Enterprises, 934 P. 2d 1253, 1256 (Wyo. 1997) (judgment is final when “opinion is filed with the clerk”), with Ex parte Johnson, 12 S. W. 3d 472,473 (Texas CCA 2000) (per curiam) (judgment is final at “issuance of the mandate”).

 We note that Gonzalez waited four months from the date of the man­date’s issuance before filing a state habeas petition. See 623 F. 3d, at 223. When that petition was dismissed as improperly filed, Gonzalez waited another three months before refiling. Ibid. Even then, his state habeas proceedings concluded several weeks before his 1-year federal deadline elapsed. Id., at 225.